**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 1:20CR074** |
| | : | |
| **vs.** | : | **Judge Barrett** |
| | : | |
| **DARIAS JACKSON, JESSICA BROWN,** | : | |
| **AND GREGORY JACKSON** | : | |
| | : | |
| **Defendants.** | : | **HEARING REQUESTED** |

<u>**MOTION TO DISMISS BASED ON PROSECUTORIAL MISCONDUCT**</u>

Darias Jackson, Jessica Brown, and Gregory Jackson, by and through counsel, hereby move

this honorable Court to dismiss the second superseding indictment as a violation of Due Process

under the Fifth Amendment. In addition to being filed after an unreasonable and prejudicial pretrial

delay, the second superseding indictment seeks to punish the Defendants because Darias elected to

exercise his constitutional right to trial. Because the government's conduct shocks the conscience

and offends fundamental notions of fairness, dismissal of all charges is warranted.

In support of this Motion, the Defense has prepared the attached Memorandum in Support.

Respectfully submitted,

<u>**s/ Ravert J. Clark**</u>
Ravert J. Clark (Reg. No. 042027)
114 East 8th St., Suite 400
Cincinnati, OH 45202
(513) 587- 2887
Notguilty14@aol.com
*Attorney for Defendant Darias Jackson*

<u>**s/ Stephanie F. Kessler**</u>
Stephanie Kessler (0092338)
Pinales, Stachler, Young & Burrell Co., LPA
455 Delta Ave., Suite 105
Cincinnati, Ohio 45226
(513) 252-2732
skessler@pinalesstachler.com
*Attorney for Defendant Gregory Jackson*

<u>**s/ Zenaida R. Lockard**</u>
Zenaida R. Lockard (KY93402)
Assistant Federal Public Defender
250 East 5th St., Suite 350
Cincinnati, OH 45202
(513) 929-4834
Zenaida_Lockard@fd.org
*Attorney for Defendant Jessica Brown*

**TABLE OF CONTENTS**

I.      Relevant Facts in Timeline Form.................................................................................4

    A.      Complete Timeline ...............................................................................................5

    B.      Enlarged Timeline of Darias Jackson Supervised Release ..................................6

    C.      Enlarged Timeline of First Indictment ................................................................7

    D.      Enlarged Timeline of Superseding Indictment and Second Superseding Indictment .......8

II.     Argument.......................................................................................................................9

    A.      The government's conduct in this case amounts to a vindictive prosecution in violation of the due process rights of all three defendants............................................................9

        1.      The Government's First Stake:To avoid the possibility of losing at trial, the government has done everything in its power to induce Darias to plead guilty to the shooting. ........11

        2.      The Government's Second Stake: The government will not be satisfied with a mere conviction – it wants its pound of flesh. ...........................................................................15

        3.      Dismissal is Required .............................................................................................17

    B.      The government's manipulation of the statutory speedy trial clock violated the due process rights of all three defendants. ..............................................................................18

        1.      In context of the various STA clocks, the time between when the government was aware of the conduct supporting the charges against Jessica and Greg and when the government brought formal charges weighs in favor of finding the superseding indictments were in bad faith and pretextual.......................................................................20

        2.      The government's avoidance of proceeding to trial without A.W. weighs in favor of finding the superseding indictments were in bad faith and pretextual..........................23

        3.      The simplicity of this case, the absence of additional criminal conduct in furtherance of the originally identified scheme, and the lack of difficulty in investigating weigh in favor of finding the superseding indictments were both in bad faith and pretextual. ...............25

        4.      Factors surrounding the group plea weigh in favor of finding the superseding indictments were both in bad faith and pretextual..........................................................25

    C.      All charges against Darias should be dismissed as a result of the violation of his constitutional speedy trial rights. ...................................................................................27

    D.      All charges against Jessica should be dismissed as a result of the violation of her constitutional speedy trial rights. ...................................................................................29

III.    Conclusion...................................................................................................................30

## <u>MEMORANDUM IN SUPPORT</u>

On September 19, 2019, A.W. was shot. According to the government, Darias was the shooter, and both Jessica and Greg assisted him in an elaborate plan to cover it up. Despite the government's theory, the Defendants have maintained their innocence and the matter is now set for trial on July 11, 2022. The prosecution of the instant offense has been pending for over 29 months, largely because the government has been unable to locate its primary witness (i.e., A.W.). While it has averred (on multiple occasions) that it could prove its case without A.W., its conduct belies that assertion. In fact, despite being set for trial on four separate occasions, the case has not moved forward because the government has added new charges, new defendants, or both.

A close examination of the timeline in this matter reveals that the government proceeded with the prosecution in bad faith. Rather than risk a loss at trial, the government manipulated the judicial process to try to induce a plea. At the beginning of the case, Darias was charged with a violation of his supervised release alone. But when Darias asserted his right to a hearing, the government indicted him with a new federal offense (but the same underlying conduct), and thereby ratcheted up his potential period of imprisonment. When the threat of more time did not dissuade Darias from electing to go to trial, the government ███████ ████████████████. When those efforts were thwarted, the government opted to indict Jessica Brown, Darias' long term partner and mother of his children. And when that proved futile, the government charged Darias' brother, Gregory Jackson, yet another tactic used to compel a pretrial disposition. Importantly, while the government had all the evidence it needed to indict Jessica and Greg at the outset, it chose not to initially charge them and instead added them one-by-one.

By prosecuting this case in a piecemeal fashion, the government was able to increasingly place more pressure on Darias to plead. Additionally, it bought itself the time it needed to prepare the case for trial. Knowing it would face difficulty if the case proceeded to trial without A.W., the

government circumvented the Speedy Trial Clock by filing a superseding indictment on the eve of every trial listing.

As a final, last-ditch effort to keep this matter from going to trial, the government offered all three Defendants resolutions under a global plea. According to the terms of the offer, if Darias would take 15-22 years, Jessica and Greg could walk. But if he rejected the offer as is, the plea deals for Jessica and Greg were off the table. Due to a disagreement about his advisory guideline range, Darias refused to plead under the government's terms and instead offered to plead open to all charges, assuming Jessica and Greg would still get the benefit of their offers. While Darias was willing to plead, he wanted the Court to maintain control of his guideline calculation and sentence.

Rather than settle this matter, the government rejected Darias' proposal. While it was invested in getting Darias to plead, it also wanted to control the length of his sentence. In other words, because the government did not trust the Court to sentence Darias to "enough" time, it rejected Darias' counter offer and pulled the global plea. Upon doing so, the government made clear that Jessica and Greg now deserved prison time, and that Jessica's livelihood of being a nurse was not worth preserving in exchange for her plea.

The Defendants submit that the series of events described above violated their right to due process of law under the Fifth Amendment. Such conduct offends concepts of fundamental fairness and is shocking to the universal sense of justice in a criminal case. Accordingly, the second superseding indictment must be dismissed.

## I. RELEVANT FACTS IN TIMELINE FORM

Because the facts are easier to understand when presented visually in a timeline, the defense has opted to summarize them in the table provided below:[1]

---

[1] The table is presented in four pages. The first page is the entire timeline and contains all the relevant facts. The next three pages are duplicative of the timeline, but provide one enlarged column per page to allow for ease of reading.

## A. Complete Timeline

**Darias Jackson Supervised Release**

| Date | Event |
|---|---|
| 09.19.19 | A.W. is shot. |
| 10.04.19 | Darias turned himself in on the state charges. A federal arrest warrant was issued for Darias for an alleged supervised release violation. |
| 12.19.19 | Darias' state court attorney filed a motion to dismiss the state case. |
| 01.08.20 | State case is dismissed. After the dismissal, federal agents interviewed A.W. |
| 01.09.20 | Darias Jackson was brought into federal custody for an alleged supervised release violation. |
| 01.23.20 | A preliminary hearing was held for Darias' supervised release revocation. |
| 02.12.20 | A list of Darias' Justice Center jail calls is printed. |
| 06.19.20 | A notice of hearing was filed setting a revocation hearing for 07.20.20. |
| 07.08.20 | Jessica Brown testified to the grand jury. Agents secured a search warrant for Jessica's apartment. |
| 07.16.20 | A search warrant was executed on Jessica's apartment. |
| 07.16.20 | JFS becomes involved. |
| 07.17.20 | At a status conference, the 07.20.20 revocation hearing date was vacated. |

**First Indictment**

| Date | Event |
|---|---|
| 07.22.20 | First indictment charging Darias with possession of ammunition by a prohibited person is filed. |
| 08.27.20 | At a status conference, the government reported that discovery was nearly complete. Accordingly, trial was set for 09.30.20. |
| 09.09.20 | Final pretrial held in anticipation of 09.30.20 trial. |
| 09.19.20 | Darias filed a motion to continue the trial date noting that the government had produced a significant amount of discovery despite having made prior representations that discovery was nearly complete. Darias' motion also noted that the government made a plea offer on 09.11.20. |
| 09.23.20 | This Court granted Darias' motion to continue. The trial date was reset to 11.12.20. |
| 11.12.20 | **TRIAL DATE** |

**Superseding Indictment**

| Date | Event |
|---|---|
| 10.21.20 | A superseding indictment was filed. Jessica Brown was included as a defendant. Additional charges were added for Darias. |
| 11.09.20 | Cellebrite report is created for Jessica Brown's phone. This report contains the "Greg Jizzle" exchange. |
| 01.04.21 | At a status conference, a jury trial was set for 02.01.21. |
| 01.05.21 | In an Order, this Court noted "A.W. is not available for trial," and addressed two related motions in limine filed by the government. |
| 01.19.21 | In an affidavit submitted in support of a search warrant for a particular phone number, the affiant wrote they had not been able to serve A.W. with a subpoena to testify. |
| 01.19.21 | Brown filed a motion to continue the trial date. |
| 01.28.21 | Kelly Rossi signed an Application of the United States for an Order Pursuant to 18 U.S.C. 2703(d), in which she indicated that "they have been trying for months to find A.W." |
| 02.01.21 | The trial date was continued to 03.22.21. |

**Second Superseding Indictment**

| Date | Event |
|---|---|
| 02.25.21 | A second superseding indictment was filed. Greg Jackson is added as a defendant. |
| 03.22.21 | **TRIAL DATE** |

**B. Enlarged Timeline of Darias Jackson Supervised Release**

| Darias Jackson Supervised Release | |
|---|---|
| 09.19.19 | A.W. is shot. |
| 10.04.19 | Darias turned himself in on the state charges. A federal arrest warrant was issued for Darias for an alleged supervised release violation. |
| 12.19.19 | Darias' state court attorney filed a motion to dismiss the state case. |
| 01.08.20 | State case is dismissed. After the dismissal, federal agents interviewed A.W. |
| 01.09.20 | Darias Jackson was brought into federal custody for an alleged supervised release violation. |
| 01.23.20 | A preliminary hearing was held for Darias' supervised release revocation. |
| 02.12.20 | A list of Darias' Justice Center jail calls is printed. |
| 06.19.20 | A notice of hearing was filed setting a revocation hearing for 07.20.20. |
| 07.08.20 | Jessica Brown testified to the grand jury. Agents secured a search warrant for Jessica's apartment. |
| 07.16.20 | A search warrant was executed on Jessica's apartment. |
| 07.16.20 | JFS becomes involved. |
| 07.17.20 | At a status conference, the 07.20.20 revocation hearing date was vacated. |

6

**C. Enlarged Timeline of First Indictment**

| First Indictment | |
|---|---|
| 07.22.20 | First indictment charging Darias with possession of ammunition by a prohibited person is filed. |
| 08.27.20 | At a status conference, the government reported that discovery was nearly complete. Accordingly, trial was set for 09.30.20. |
| 09.09.20 | Final pretrial held in anticipation of 09.30.20 trial. |
| 09.19.20 | Darias filed a motion to continue the trial date noting that the government had produced a significant amount of discovery despite having made prior representations that discovery was nearly complete. Darias' motion also noted that the government made a plea offer on 09.11.20. |
| 09.23.20 | This Court granted Darias' motion to continue. The trial date was reset to 11.12.20. |
| | ➡ |
| **11.12.20** | **TRIAL DATE** |

**D. Enlarged Timeline of Superseding Indictment and Second Superseding Indictment**

| Superseding Indictment | | | |
|---|---|---|---|
| 10.21.20 | A superseding indictment was filed. Jessica Brown was included as a defendant. Additional charges were added for Darias. | | |
| 11.09.20 | Cellebrite report is created for Jessica Brown's phone. This report contains the "Greg Jizzle" exchange. | | |
| 01.04.21 | At a status conference, a jury trial was set for 02.01.21. | | |
| 01.05.21 | In an Order, this Court noted "A.W. is not available for trial," and addressed two related motions in limine filed by the government. | | |
| 01.19.21 | In an affidavit submitted in support of a search warrant for a particular phone number, the affiant wrote they had not been able to serve A.W. with a subpoena to testify. | | |
| 01.19.21 | Brown filed a motion to continue the trial date. | | |
| 01.28.21 | Kelly Rossi signed an Application of the United States for an Order Pursuant to 18 U.S.C. 2703(d), in which she indicated that "they have been trying for months to find A.W." | | |
| 02.01.21 | The trial date was continued to 03.22.21. | Second Superseding Indictment | |
| | | 02.25.21 | A second superseding indictment was filed. Greg Jackson is added as a defendant. |
| 03.22.21 | **TRIAL DATE** | | |

8

## II.  ARGUMENT

### A. The government's conduct in this case amounts to a vindictive prosecution in violation of the due process rights of all three defendants.

"[A] prosecutor's 'broad discretion' in deciding whom to prosecute and which charges to bring 'is not unfettered.'" *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013) (quoting *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001)). "At a minimum, prosecutorial discretion is restrained by the Due Process Clause, which prohibits the prosecution from punishing a defendant for exercising a protected statutory or constitutional right." *LeDeau*, 734 F.3d at 566 (citing *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). As recognized by the Supreme Court, "punish[ing] a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).

As a safeguard to protect a defendant's Due Process rights, the Supreme Court established a vindictive-prosecution doctrine that protects a defendant from actual vindictiveness as well as the reasonable apprehension of such vindictiveness. *Blackledge v. Perry*, 417 U.S. 21, 28 (1974); *see Turner v. Tennessee*, 940 F.2d 1000, 1001 (6th Cir. 1991) (requiring the government to show pretrial proceedings were "free of a reasonable apprehension of prosecutorial vindictiveness.").[2] Notably, the Sixth Circuit has upheld the application of the doctrine to a prosecutor's pretrial conduct, *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980) (en banc), and additionally endorses the remedy of a dismissal when the defense can establish vindictiveness. *LeDeau*, 734 F.3d at 566-67.

In a claim of vindictive prosecution, if the defense shows that "'(1) the prosecutor has some stake in deterring the [defendant's] exercise of his rights and (2) the prosecutor's conduct was somehow unreasonable,' then the district court may find that there is a 'reasonable likelihood of

---

[2] The standard, as adopted by the Sixth Circuit, requires the defendant to establish either "actual vindictiveness" (i.e., "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights") or "a 'realistic likelihood of vindictiveness' for the prosecutor's action." *LeDeau*, 734 F.3d at 566.

9

vindictiveness' and may presume an improper vindictive motive." *Id.* (quoting *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001). The burden then shifts to the government to disprove the vindictiveness (or rebut the presumption) with "objective, on-the-record explanations." *LeDeau*, 734 F.3d at 566-67 (citing *Bragan*, 249 F.3d at 482 and *Andrews*, 633 F.2d at 453-54). At this stage, per the Sixth Circuit, "it is incumbent upon the district court to conduct an evidentiary hearing where the government's explanations can be formally presented and tested." *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989).

Analyzing a vindictive prosecution claim is fact-specific and intensive. As recognized by the Sixth Circuit, courts "must assess the fact situation before it to see if the [vindictiveness] standard is met…. Each situation will necessarily turn on its own facts." *LeDeau*, 734 F.3d at 567 (quoting *Andrews*, 633 F.2d at 453-54). Notably, awarding a dismissal of charges does not necessarily require a finding that the prosecutor acted in bad faith. *Andrews*, 633 F.2d at 454-55. Instead, because the standard includes a *realistic likelihood of vindictiveness*, the barring of charges can simply indicate that the presumption was not rebutted and the facts support a finding of a reasonable apprehension of vindictiveness. *See id.*

A district court's decision to dismiss an indictment for prosecutorial vindictiveness is reviewed on appeal for an abuse of discretion, giving this Court wide latitude to vindicate the Constitutional rights of Darias, Jessica, and Greg. *LeDeau*, 734 F.3d at 565 (citing *United States v. Moon*, 513 F.3d 517, 534 (6th Cir. 2008); *also United States v. Dupree*, 323 F.3d 480, 484 (6th Cir. 2003)).

1. **The Government's First Stake: To avoid the possibility of losing at trial, the government has done everything in its power to induce Darias to plead guilty to the shooting.**

In the instant prosecution, the government has repeatedly accused Darias Jackson of shooting A.W. While Darias has been charged federally with possession of ammunition, his conviction on the allegation necessarily requires a finding that he was the shooter.[3] From the outset, Darias adamantly denied any involvement in the shooting and further asserted that if the government wanted to convict him, it would have to prove its case. But proving its case has been seemingly problematic, since the government has articulated (on more than one occasion) a difficulty with locating its primary witness (i.e., A.W.). *See, for e.g.,* (R.25, Government Motion in Limine at PageID 79) ("To date, the United States has been unsuccessful in its attempts to locate and serve A.W. with a trial subpoena for September 30, 2020."). *Also* Def. Ex. A, Application for Search Warrant for 8361 phone at ¶ 43 ("Law enforcement agents have been unable to serve the Victim with a subpoena to testify at trial, in part because the Victim previously provided law enforcement with a fake phone number.") (filed separately under seal). Obviously, if Darias were to plead guilty, the government would be alleviated of its burden to prove his involvement; and therein lies the government's first stake in deterring Darias from exercising his rights. To avoid the possibility of losing this case at trial, the government has done everything in its power to induce Darias to plead guilty.

i. **The government's first move was to ratchet up the potential penalties facing Darias if he is convicted.**

The easiest way for the government to induce a plea was to threaten Darias with more time in prison. Accordingly, what originated as an alleged violation of supervised release, has evolved on three separate occasions and resulted in an indictment, a superseding indictment, and a second superseding indictment. "Upping the ante" by the prosecution, after the defendant has asserted a

---

[3] In other words, because the ammunition was collected from the scene of the shooting, to convict Darias for the federal charge, the trier of fact must believe that Darias shot A.W.

11

procedural right, is the type of circumstance that tends to create a reasonable apprehension of vindictiveness. *See Blackledge*, 417 U.S. 21, 28 (1974). As such, a defendant is entitled to exercise his rights "without apprehension that the [] [government] will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." *Id.*

Had Darias been revoked for the violation of supervised release alone, the maximum penalty by statute would have been up to 5 years in prison.[4] However, when he demanded that the government prove his involvement, and refused to admit any wrongdoing, the government retaliated and indicted him for possession of ammunition. (R.13, Indictment). That move by the government in turn subjected Darias to a higher possible penalty and doubled his overall exposure from 5 to 15 years.[5] Importantly, the conduct underlying the original indictment and the violation of supervised release was the same. In both allegations, the government averred that Darias shot A.W. Thus, the government's choice to indict Darias (and thereby significantly increase the potential penalty) – after he exercised his rights – appears vindictively motivated.

    ii.    **The government's second move was to** ██████████████
██████  ██████████████

But the government did not stop there. Outside of the instant case, the government used a ████████████████ to further its efforts to strong arm a plea. After Darias had already been locked up for nine months on the pending charges, the government had ATF agents execute a search warrant at Jessica's apartment on July 16, 2020. Following that search, the government ████████
████████████████████████████

---

[4] Darias' underlying conviction was for a Class A Felony. *See* (Case No. 1:12-CR-00095, R.904, Judgment). Thus, by statute, if violated at a revocation proceeding, he faces a maximum potential penalty of up to 5 years imprisonment. 18 U.S.C. § 3583(b)(1).

[5] For possession of ammunition, Darias faces up to 10 years in prison if convicted. 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Because the guidelines require that sentences imposed for violations of supervised release run consecutive, *see* U.S.S.G. §7B1.3(f), Darias' total exposure for both cases would be 15 years (or 10 years + 5 years).

██ Specifically, ████████████████████████████████████████████████

████████████████████████████ Based on Jessica's recollection, that ████████████████

████████████████████████████████████ where ████████████████████████████

████████████████████████████████████████████████████████████

████████████████ ████████████████████████████████████████████

████████████████████████████████████

Throughout the ████████████ ████████████████████████████████████████████

████████████ and while the ████████████████████████████████████████

████████████ the process was still extremely disruptive and caused unwarranted stress for both Darias and Jessica. To date, Jessica is still haunted by the thought that ████████████████████████

████████████████████████████ But that is precisely what ████████████████████████████

████████████████ 

As part of its investigation, the defense ████████████████████████████████████████████ ██

████████████████████████████ *See* Def. Ex. B, ████████████ (filed under seal with permission by this Court). ████████████ clearly illustrate ████████████████████████████████

████████████████████████████████████████████████████████████ and when viewed in the context of the overall prosecution of this case, was an obvious attempt to (once again) induce Darias to plead guilty. Both Darias and Jessica knew that ████████████████████████████

████████████████████████████████████████████████████████████████████

████████ calculated move by the government, done in a vindictive manner to win at all costs.

### iii. The government's third move was to indict Darias' loved ones.

But the government did not stop there. When it became clear that its efforts to ████████████

████████████████████████ were going to be unsuccessful, and that Darias was still going to elect to go to trial, the government moved on to going after Darias' family members. In late October 2020, just over a year after Darias was first locked up, the government indicted Jessica on conspiracy to

obstruct justice, obstruction of justice, and perjury charges. (R.30, Superseding Indictment). The offense conduct alleged in the superseding indictment stemmed from her testimony in front of the grand jury, which importantly occurred eight days prior (i.e., July 8, 2020) to ████████████ ██████ Rather than immediately indict Jessica for her alleged lies in front of the grand jury, the government waited over three and a half months before dragging her into the case. This unnecessary delay further evidences the government's stake in inducing a plea. When all of its other efforts were all but thwarted, it once again tried to hit Darias where it hurt – it charged the mother of his children.

Importantly, when the government made the decision to proceed with charges against Jessica, it knew full well that a felony conviction had the potential to impact Jessica's livelihood because she is a nurse. This, in turn, would also unquestionably affect her ability to support and raise their children. Thus, the government's indictment of her (as well as the timing of it) was a clear and intentional move, made in an effort to spur Darias to plead. When that proved unsuccessful, the government then went after Darias' brother.

In February 2021, 15 months after Darias was arrested and four months after Jessica was indicted, the government charged Darias' brother Greg in a second superseding indictment. Notably, the allegations (which detail a purported attempt to cover up Darias' involvement in the shooting) date back to October and November 2019. (R.55, Second Superseding Indictment). The charges stem from jail calls that were made between Darias, Jessica, and Greg, while Darias was held at the Hamilton County Justice Center. The discovery productions by the government indicate that the agents had accessed and downloaded the relevant calls as early as February 2020. Def. Ex. C, Download Queue File List. But, rather than charge the parties in a timely fashion, the government sat on the evidence. This decision – to wait an entire year before indicting Greg and Jessica for the alleged cover up – appears virtually inexplicable, unless it is viewed in the larger context of the overall prosecution of this case.

The government is either unwilling or unable to proceed to trial without A.W. as a witness.

To induce Darias to plead guilty, and avoid a possible loss at trial, it has used every weapon available in its arsenal. Indicting Jessica and Greg in a piecemeal fashion was yet another tactic the government employed to force Darias to plead guilty. The timing of their indictments illustrates that they are not the primary targets of the government. Indeed, had Darias plead guilty from the beginning, Jessica and Greg never would have been charged at all. But, in light of Darias' repeated demands to go to trial, and the government's fear of losing at that trial, the government used Jessica and Greg as pawns in its prosecution of this case. By adding them to the case one-by-one, the government placed continuous pressure on Darias to sacrifice himself and plead guilty in order to save his loved ones.

**2. The Government's Second Stake: The government will not be satisfied with a mere conviction – it wants its pound of flesh.**

But sadly, the government's stake in the outcome of this case is not limited to convicting Darias. While it does not want to lose at trial, and has certainly done everything in its power to induce a plea, it also wants to take away the Court's discretion in determining an appropriate sentence. From the outset of the case, the government made clear when negotiating with Darias that it wanted a lengthy term of imprisonment meted out, often at or near the statutory maximum.[6] As such, every time the government charged Darias in a new indictment, the end number in the plea offer would also increase exponentially, a fact that further illustrates the vindictive manner in which this prosecution has been handled.

Nowhere is this more evident than in the context of the global plea offer. Knowing full well that Darias has maintained his innocence throughout the pendency of this case, the government dangled another carrot in front of him to (once again) induce a plea. Specifically, the government offered both Jessica and Greg an agreement for probation, and additionally told Jessica it would

---

[6] For example, when Darias was initially indicted, the offer to resolve the case was 9 years imprisonment. At that time, the statutory maximum term of imprisonment for a violation of 18 U.S.C. § 922(g)(1) – Darias' sole charge – was 10 years.

extend a misdemeanor plea to permit her to keep her career. (R.116, Motion for *Lafler* Hearing at PageID 374-75). In exchange for those concessions, the government wanted Darias to plead guilty to a binding sentencing range of 15 to 22 years. (*Id.*, at PageID 374). In other words, under the global plea, Darias would have to forego any arguments he had as to the calculation of his advisory guideline range.[7]

While Darias rejected that offer from the government, he indicated a willingness to plead guilty to *all charges*, so long as the Court retained its authority to determine his guideline calculation and Jessica and Greg got the benefit of their same offers. (*Id.*). But even that – an offer by Darias to plead guilty to all charges – did not satisfy the government. While the government clearly wants to hold Darias accountable for the shooting, a conviction in and of itself is insufficient. To meet the government's sense of "justice" in this case, Darias must be convicted, and he must also be subject to the term of imprisonment the government has deemed appropriate – i.e., 15-22 years. In short, the government wants to take away any discretion this Court might have in calculating the guidelines and determining the sentence, thereby ensuring that the final term of incarceration meets the government's idea of what constitutes "enough" time.

The defense does not dispute that under certain scenarios a global plea offer might be permissible, but in the context of this case, it is unquestionably problematic in light of its highly coercive nature. For Jessica and Greg to receive the benefits of their offers, Darias would need to agree to a sentence that was potentially more than double his advisory guideline range. If he rejected

---

[7] By way of reminder, during the *Lafler* hearing, counsel for Darias disclosed that his calculation of the guideline range differed significantly from the government's. (R.135, Transcript at PageID 458). Importantly, if the defense calculation of the guidelines is adopted by the Court, Darias would face an advisory guideline range of 110-137 months, or between 9+ to 11+ years (i.e., 6-11 years less than the government offer). (*Id.*, at PageID 459). At the suggestion of Jessica's counsel, (*id.*, at PageID 468-69), following the *Lafler* hearing, on November 1, 2021, counsel for all defendants and counsel for the government participated in a joint conference call with the United States Sentencing Commission. During that call, the government articulated its guideline calculation and counsel for Darias outlined his – at issue was the applicability of a cross reference. After hearing the positions of both parties, the Commission advised that the issue is fact specific and that the Court would need to resolve the dispute based on the evidence presented at the time of sentencing.

that offer, Jessica and Greg would be left in the cold and ultimately punished for the decision Darias made. The government has expressed, in no uncertain terms, that if Darias does not agree to serve the sentence it deems just (i.e., 15-22 years), it will use its power to seek felony convictions and terms of imprisonment for both Jessica and Greg. In short, the government is using Jessica and Greg as pawns to leverage a guilty plea out of Darias for a set number of years. This behavior by the government, at a minimum, gives rise to a reasonable apprehension of vindictiveness. But, in the context of the entire prosecution, and the manner and method with which the government has proceeded, it is just as likely that the government has an actual vindictive motive.

### 3. Dismissal is Required.

The Supreme Court has long held that the Due Process Clause of the Fifth and Fourteenth Amendments may require dismissal of criminal charges where the governmental action involved offends fundamental notions of fairness. For example, in *Rochin v. California*, 342 U.S. 165 (1952), law enforcement officers forcibly pumped a defendant's stomach in order to obtain as evidence two pills that he had swallowed. The defendant was convicted in state court, and the Supreme Court ultimately determined that the officers' conduct violated the defendant's rights to due process, as applied to the states through the Fourteenth Amendment. The Court emphasized that a federal court has the inescapable duty under the Due Process Clause to conduct "an exercise of judgment upon the whole course of the proceedings (resulting in conviction) in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice…" *Id.*, at 169.[8] As such, the Court ruled that the governmental actions in the case "shock[ed] conscience" of the Court, and offended fundamental notions of due process. *Id.*, at 172-73. Accordingly, the defendant's conviction was reversed.[9]

---

[8] Notably, this is true, "even [] [for] those charged with the most heinous crimes." *Id.*

[9] Following suit with the Supreme Court, the Sixth Circuit has held that "outrageous government conduct outside the grand jury process could result in dismissal on due process grounds if such conduct is so outrageous that it violates 'fundamental fairness' or is 'shocking to the universal sense

Here, the government's conduct is precisely the type of conduct that should shock the conscience of the Court. In a desperate attempt not to lose the case at trial, the government did everything in its power to induce Darias to plead guilty. It ratcheted up his penalties, it ███████ ███████ and it targeted his family members. When those efforts proved futile, it feigned participation in plea negotiations. But the government knew full well it was only going to strike a deal if Darias agreed to a stipulated sentence that was potentially double his guidelines. If that were not enough, as detailed more below, the government also engaged in gamesmanship with the Speedy Trial Clock to buy more time to attempt to build a provable case.

This intentional and orchestrated conduct on the part of the government should not be condoned by the Court. It without question offends notions of fundamental fairness and is beyond shocking in nature. Accordingly, the requested dismissal is not only warranted, it is required by the facts of this case.

### B. The government's manipulation of the statutory speedy trial clock violated the due process rights of all three defendants.

The government violates a defendant's due process rights when the government manipulates the speedy trial clock even though the speedy trial act clock ("STA clock") has not yet run. The Sixth Circuit, in *United States v. Chew*, observed the existence of a context in which a speedy trial claim is viable when ends-of-justice continuances have been granted. Although the Sixth Circuit did not find a speedy trial violation, it noted: "To the extent the delay occasioned by the ends-of-justice continuance was indirectly caused by the filing of the superseding indictment, Chew's speedy trial claim would be strengthened only if the record showed abuse of prosecutorial discretion, such as dilatory purpose or bad faith." *United States v. Chew*, 497 F. App'x 555, 559

---

of justice.'"  *United States v. Allen*, 619 F.3d, 518, 525 (6th Cir. 2010). *See also United States v. Lanier*, 33 F.3d 639 (6th Cir. 1994); *United States v. Little*, 12 F.3d 215 (6th Cir. 1993); *United States v. Brown*, 635 F.2d 1207 (6th Cir. 1980); *United States v. Warwick*, 167 F.3d 965 (6th Cir. 1999) (recognizing same).

(6th Cir. 2012). The Eastern District of Michigan developed the theory further. "[T]he Government cannot repeatedly seek superseding indictments of a defendant to frustrate the speedy trial clock." *United States v. Hogg*, No. 13-CR-20809, 2014 WL 1795311, at *4 (E.D. Mich. May 6, 2014) (citing *Chew*, 497 F. App'x at 559).

In order to establish a due process violation on a theory of government manipulation of the STA clock, a defendant "must demonstrate that a superseding indictment is 'unreasonable, the product of bad faith, or a pretext to avoid the requirements of the Speedy Trial Act.'" *Hogg*, at *4, (quoting *Chew,* 497 F. Appx. at 559). When analyzing whether the government sought superseding indictments in bad faith or as a pretext, a reviewing court should consider several factors. The Ninth Circuit Court of Appeals has outlined some of those factors. In *United States v. Chen Chiang Liu*, the Ninth Circuit addressed a speedy trial violation claim in a situation where the original defendant's STA clock reset when his wife was later indicted. *United States v. Chen Chiang Liu*, 631 F.3d 993, 999 (9th Cir. 2011). The Ninth Circuit concluded "Because the delay in the filing of the SSI [second superseding indictment] that named another defendant was reasonable, and because there is no evidence of bad faith on the part of the government, [the original defendant's] STA clock restarted on April 2, 2008" when the second superseding indictment was filed. *United States v. Chen Chiang Liu*, 631 F.3d 993, 999 (9th Cir. 2011). In assessing the reasonability of the delay in filing the second superseding indictment, the Ninth Circuit articulated:

> There is no evidence in the record before us to suggest that the delay between the filing of the California indictment and the addition of Min Li through the filing of the SSI was unreasonable. […] Additionally, there is no indication in the record that the government knew of Min Li's alleged participation in the conspiracy until July 31, 2007, the day she was arrested in Las Vegas for attempting to pass counterfeit currency through slot machines. The nine-month delay between the day Min Li was arrested and the filing of the SSI in Nevada adding her to the conspiracy first outlined in the California indictment is reasonable given the multijurisdictional nature, the continuation of new illegal acts in furtherance, and the difficulty of investigating this far-flung conspiracy.

19

*United States v. Chen Chiang Liu*, 631 F.3d 993, 999 (9th Cir. 2011). Thus, in accordance with *Chen Chiang Liu*, a reviewing court should consider: (1) when the government knew of a co-defendant's alleged criminal conduct in relation to when the government indicted that co-defendant; (2) the complexity of the case; (3) whether defendants engaged in new illegal acts in furtherance of the initially charged crime; and (4) the difficulty of investigating the original charged crime when considering whether superseding indictments are pretextual or in bad faith.

1. **In context of the various STA clocks, the time between when the government was aware of the conduct supporting the charges against Jessica and Greg and when the government brought formal charges weighs in favor of finding the superseding indictments were in bad faith and pretextual.**

The government was aware of the conduct it charged Jessica with well before it indicted her. In the Superseding Indictment, the criminal conduct Jessica was charged with all stemmed from her July 8, 2020, testimony to the grand jury. For Count 5 of the Superseding Indictment, the government alleged Jessica lied when she said she did not know if Darias Jackson had a Facebook account. For Count 6, the government alleged Jessica lied when she said she had never seen him using a second phone. At 3:05 PM on July 8, 2020, a U.S. magistrate judge signed a search warrant for Jessica's apartment. Def. Ex. D, Search Warrant for Jessica's Apartment (filed separately under seal). In the supporting affidavit, the affiant wrote a transcript of a call between Darias and Jessica in which Darias directed Jessica to get on his Facebook account. Def. Ex. E, Application for Search Warrant for Jessica's Apartment ¶ 24 (filed separately under seal). Further, the affiant wrote "Based on the foregoing calls, I believe that Jackson gave J.B. multiple cellphones for safekeep before self-surrendering…Accordingly, I believe there is probable cause to believe that J.B. still has custody of Jackson's phones." *Id.* Jessica testified before the grand jury on July 8, 2020. *See Addendum by Jessica Brown filed separately under seal for additional argument.*

Although the delay is not long, the timing of the Superseding Indictment is significant in context to the STA clock on the first Indictment. Trial for the first indictment was set for November 12, 2020.[10] Here, the government needed to either proceed to trial or find a way to avoid trial while also avoiding the STA clock requirements. Charges against Jessica were brought less than one month before the November 12th trial date. The Superseding Indictment, in addition to being premised upon bad faith, is pretextual. It was filed so that the government could continue its pursuit of obtaining a conviction of Darias by plea and its pound of flesh, as outlined more fully earlier in this Memorandum.

As was the case with Jessica, the government was aware of the conduct it charged Greg with well before it indicted him. The best description of Greg's alleged criminal activity is set forth in the government's response in opposition to Greg's motions for reconsideration of detention. The government's Response claims:

1) evidence from recorded jail calls Darias made while in state custody prior to the dismissal of his state case show Greg was involved in the charged conspiracy;
2) evidence suggests Greg, along with Unindicted Co-Conspirator #1 visited A.W. in the hospital to get A.W. to sign the affidavit; and
3) A.W had a text conversation with a person he referred to as "Greg Jizzle" about Darias' state case dismissal. The government alleges this text is about a "payoff" and that "Greg Jizzle" is Greg Jackson.

(R.119, Government's Response in Opposition at PageID 390-93). As for the jail calls, the government agents had been listening to Darias' jail calls for quite some time before they indicted Greg. As discussed earlier in this Memorandum, federal agents were listening to Darias' jail calls as early as February of 2020, five months before the Indictment, eight months before

_____

[10] The November 2020 trial setting was not the original trial setting. Initially, at a status conference, the government reported discovery was nearly complete. *See* Minute Entry for proceedings held before Judge Michael R. Barrett, Aug 27, 2020. Consequently, a trial was set for September 30, 2020. However, that trial date was vacated when Darias filed a motion to continue the trial date after receiving a significant amount of discovery. (R. 27, Motion to Continue Trial Date).

the Superseding Indictment, and 12 months before the Second Superseding Indictment charging Greg Jackson as a co-defendant.

As for the two people who allegedly took the affidavit to A.W., the government has been aware that two people visited A.W. at the hospital before they indicted anyone. At a preliminary hearing on February 23, 2020, Agent Reder testified that the notary described two individuals who she said were standing in the room when she spoke with A.W. about the affidavit. (1:12-cr-95, Preliminary Hearing Tr. at page 9). According to Agent Reder, the notary described them as "One was very tall, approximately six-foot-five-inch, slender black male. The second was a shorter, more average build black male." *Id.* According to the government Co-Conspirator #1 was one of the two people described by the notary. As set forth by the government, Co-Conspirator #1 is one of Darias Jackson's brothers. (R.55, Second Superseding Indictment at ¶ 3). Darias and Greg's brother is not six-foot-five-inches tall or anywhere close to that. Greg Jackson is five-foot-nine inches tall.

As for the "Greg Jizzle" text, the text was recovered from an extraction of Jessica Brown's phone. According to the government, A.W. took a screen shot of a text exchange between A.W. and Greg Jizzle and then A.W. texted that screen shot to Jessica. The text exchange is not present in Greg's iCloud or phones. The Cellebrite report containing the text exchange between Jessica and A.W. was created on November 9, 2020. Thus, the government was aware of the "Greg Jizzle" text exchange three months before Greg was indicted.

Again, the timing of the Second Superseding Indictment is significant in context to the STA clock on the Superseding Indictment. Trial for the Superseding Indictment was set for March 22, 2021. However, that trial date never took place because, again, the government issued another superseding indictment less than one month before trial. It was filed so that the government could continue its pursuit of obtaining a conviction of Darias by plea and its pound

22

of flesh. The Second Superseding Indictment, in addition to being premised upon bad faith, is pretextual.

### 2. The government's avoidance of proceeding to trial without A.W. weighs in favor of finding the superseding indictments were in bad faith and pretextual.

Actions speak louder than words. The fact the superseding indictments were in bad faith and pretextual is further illustrated by the government's conduct demonstrating that it did not want to, and thus sought to avoid, proceeding to trial without A.W.'s participation. The government, apparently, has not been able to subpoena A.W. to testify at trial.[11] The fact the government had not been able to subpoena A.W. for trial on the first Indictment or for trial on the Superseding Indictment is evidenced by a government filed Motion *in Limine*. On September 10, 2020, under the first Indictment, the government filed a Motion *in Limine* seeking to exclude "impeachment evidence" and "inadmissible hearsay" related to A.W. (R.25, Government's Motion *in Limine* to Exclude Impeachment Evidence and Exclude Inadmissible Hearsay of a Non-testifying Witness). Before this Court ruled on the motion, the Superseding Indictment was filed. When ruling on the motion while under the Superseding Indictment, this Court noted "Apparently A.W. is not available for trial." (R.50, Order). This Court took the issue of admissible "impeachment evidence" and "inadmissible hearsay" related to A.W. under submission. Two days after this Court ruled that it would take the issue under advisement, the government filed a Motion to Reconsider. (R.51, Government's Motion to Reconsider). However, contrary to their words, the government's actions indicate the government had serious doubts about

---

[11] The fact the government is likely to assert that they cannot subpoena A.W. because of criminal conduct of the defendants is immaterial to the procedural nature of a criminal case. In the absence of a guilty plea, the government can either drop criminal charges or proceed to trial within the STA requirements.

whether it could proceed to trial without A.W., at least not if the "impeachment evidence" and "inadmissible hearsay" were determined at trial to be admissible.[12]

It is clear the government was trying to locate A.W. shortly after this Court's ruling on the motion *in limine*. In an affidavit supporting a search warrant, the affiant wrote "Law enforcement agents have been unable to serve the Victim with a subpoena to testify at trial, in part because the Victim previously provided law enforcement with a fake phone number." Def. Ex. A.[13] Then, a few weeks after that, one of the US attorneys assigned to this case, in an Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d), wrote "Law enforcement agents have attempted to locate the Victim for months without success." Def. Ex. F, Application for Order (filed separately under seal). The fact the government has been actively searching for A.W., and avoiding proceeding to trial without him, evidences the superseding indictments were pretextual.

---

[12] Notably, A.W. has a conviction for manslaughter. *See* Hamilton County Common Pleas Case No. B 0801053. According to a Translives Matter website, "Brian McGlothin, dressed in women's clothes, was shot in the head with an automatic rifle two days before Christmas. [ . . . ] [A.W.] who accepted a Monday plea deal that allowed him to escape a murder trial and a potential life sentence, was sent to prison for six years for the killing, but A.W. continued to deny he killed McGlothin." https://tdor.translivesmatter.info/reports/2007/12/23/brian-mcglothin_cincinnati-ohio-usa_c4d5f07a

[13] Other parts of this affidavit evidence government conduct that is relevant to the vindictive nature of this prosecution. Regarding Darias' first state court defense attorney, the affiant wrote: "I know that Jackson's defenses attorney of record at this time was commonly known as 'M.J.' I am also aware of two other criminal cases in which the attorney known as M.J. submitted in discovery affidavits from witnesses that purported to exculpate a defendant but were obtained under suspicious circumstances." Further, "Specifically, I am aware of evidence that, in one case, the brother of a defendant represented by M.J. showed up at a witness's house and instructed the witness to write out an affidavit that the witness later said contained false statements. I am also aware of evidence that, in a second case, a defendant represented by M.J. showed a witness a firearm and then went to M.J.'s office (M.J. was not present at the time) to write out an affidavit that the witness later said contained false statements." However, the affiant does not provide specific information such that his claims could be verified.

**3. The simplicity of this case, the absence of additional criminal conduct in furtherance of the originally identified scheme, and the lack of difficulty in investigating weigh in favor of finding the superseding indictments were both in bad faith and pretextual.**

The other factors, as identified by the Ninth Circuit in *Chen Chiang Lieu* (the complexity of the case; whether defendants engaged in new illegal acts in furtherance of the initially charged crime; and the difficulty of investigating the original charged crime), all weigh in favor of finding bad faith. This case is not, in contrast to *Chen Chiang Lieu*, a multijurisdictional case. It is not complex. Additionally, this case revolves around the government's belief that the affidavit signed by A.W. is false and the defendants caused it to be signed. The government had this belief, at the latest, by January 8, 2020, six months before the first Indictment, nine months before the Superseding Indictment, and more than a year before the Second Superseding Indictment. Federal agents interviewed A.W. on January 8, 2020, hours after the state case was dismissed. Def. Ex. A at ¶ 16. Aside from the grand jury related charges which stemmed from activity on July 7, 2020, there is no ongoing criminal activity. Lastly, in contrast to *Chen Chiang Lieu*, this is not a "far-flung conspiracy."

**4. Factors surrounding the group plea weigh in favor of finding the superseding indictments were both in bad faith and pretextual.**

In addition to the factors set forth in *Chen Chiang Lieu*, this Court should consider factors surrounding the group plea when analyzing whether the superseding indictments were in bad faith or were pretextual. First, the nature of the group plea evidences how dedicated the government is at resolving this case in a way that it gets to determine the appropriate sentencing range for Darias without interference from pretrial services or this Court. As this Court is aware, the Government publicized the nature of a group plea in which Darias was offered an agreed plea to 15 to 22 years, Jessica would plead to a misdemeanor under a government recommended term of probation, and Greg would plead to a felony under a government recommended term of

25

probation. (R.116, Motion of the United States for *Lafler* Hearing). Jessica and Greg's plea offers were contingent upon Darias accepting his. At the *Lafler* hearing, Darias made a counter-offer. He offered to plead guilty to all charges and let the Court determine the applicable guideline range rather than agree to the specific range set forth in the agreed plea offered by the government. (R. 135, Tr. of *Lafler* Hearing at PageID 458). The government declined his offer. The government declined to resolve the case in a way that would allow pretrial services and this Court to determine Darias' guidelines. Consequently, Jessica and Greg face substantially more significant punishment because Darias would not give the government their pound of flesh.

Second, the range of sentences for Jessica and Greg evidence how dedicated the government is to securing a conviction of Darias by plea and how they view Jessica and Greg as pawns. On the day after the *Lafler* hearing, the government filed a motion in response to Greg's motion for reconsideration of detention. In it, the government argued that the guideline range applicable to Greg is 87 to 108 months. (R. 119, Government's Response in Opposition to Defendant Gregory Jackson's Second Motion for Reconsideration of Detention). Although there may be circumstances where such a disparity is appropriate, for example when a defendant offers assistance to the government in some form, the government has not sought such assistance from Greg. The difference in sentencing outcomes for Greg – based on nothing Greg does or says – further evidences the bad faith nature of the superseding indictments. Clearly, the government believes probation is an appropriate sentence for Greg and, also, a sentence of 87 to 108 months is an appropriate sentence for Greg. As for Jessica, a misdemeanor plea lets her keep her nursing license. Thus, under the global plea, she gets to keep supporting her family. Outside the global plea, she loses her job and her primary method of earning a decent income. The disparity indicates that the government does not view Jessica or Greg as independent people, rather, they are a means to the government's pursuit of a conviction by plea and pursuit of its pound of flesh.

26

All the factors described above indicate the superseding indictments were issued in bad faith and are pretextual. Therefore, a dismissal is appropriate.

### C. All charges against Darias should be dismissed as a result of the violation of his constitutional speedy trial rights.

"The Supreme Court has articulated a four-factor test for evaluating a defendant's Sixth Amendment speedy-trial claim: '(1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.'" *United States v. Pina*, 724 F. App'x 413, 420 (6th Cir. 2018) (citing *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007)). The factors are collectively known as the *Barker* factors. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). The remedy for a Sixth Amendment speedy-trial violation is dismissal with prejudice. *Pina*, 724 F. App'x at 420.

The length of delay in this case weighs in favor of dismissal. Where a delay is presumptively prejudicial, a court must consider the other *Barker* factors. "A delay is 'presumptively prejudicial' if it 'approaches one year.'" *Id.* (citing *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007)). "Unlike the Speedy Trial Act, the Sixth Amendment time calculation begins 'when the defendant is arrested or indicted, whichever is earlier.'" *Pina*, 724 F. App'x at 420 (quoting *Brown v. Romanowski*, 845 F.3d 703, 712-13 (6th Cir. 2017). Darias Jackson was brought into federal custody on the supervised release violation on January 9, 2020. (1:12-cr-95, R.391, Arrest Warrant). He was first indicted on July 22, 2020. (R. 13, Indictment). Darias has suffered a delay of two years which is beyond presumptively prejudicial.

The reason for the delay in this case, the second *Barker* factor, weighs in favor of dismissal. The government caused the delay by issuing superseding indictments in bad faith, as described in preceding section of this Motion.

27

As for assertion of his right, Darias has been adamant that he wanted to proceed to trial. As this Court is aware, Darias has often been reluctant or refused to waive his speedy trial rights. The third *Barker* factor weights in favor of dismissal.

As for the fourth *Barker* factor, this case is the rare case where the delay gives rise to a strong presumption of evidentiary prejudice. "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 at 532. The *Barker* court identified three such interests:

> (i) to prevent oppressive pretrial incarceration;
> (ii) to minimize anxiety and concern of the accused; and
> (iii) to limit the possibility that the defense will be impaired.
> Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Id.*

First, the delay has rendered one witness unavailable and a second witness substantially more difficult to contact. Darias and Greg's brother, Jearid Irvin, "Unindicted Co-Conspirator #1" listed in the Second Superseding Indictment, was murdered on January 12, 2022. According to the government, the unindicted co-conspirator played a key role in the offense. Allegedly, this person arranged to pick up the affidavit from Darias' criminal defense attorney, took the affidavit to A.W. in the hospital, and gave payment to A.W. Consequently, this person's testimony about whether he believed the affidavit contents to be truthful (that Darias did not shoot A.W.), whether he gave payment to A.W. at all, and, if he did give money to A.W., what it was for would have been significant, even outcome determinative. Based on defense counsel's conversations with Irvin, defense expected Mr. Irvin would have told a different story from that set forth in the Second Superseding Indictment. Second, the notary who notarized the affidavit at

issue in this case, has since moved out of state. Her testimony regarding the competency of A.W. at the time she notarized the affidavit is crucial given that the government alleges that A.W. reported to being under a substantial amount of pain medicine when he signed the affidavit.

Additionally, Darias has been subject to oppressive pretrial incarceration. He is at a facility that does not offer programming or educational opportunities. As the Supreme Court recognized in *Barker*, lengthy exposure to local jail conditions "has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult." *Id.* at 520. Further:

> The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious.

*Id.* at 532–33. Darias has been detained pretrial in a nonfederal facility for a little over two years. Darias constitutional speedy trial rights have been violated. Consideration of the *Barker* factors weighs in favor of a dismissal of all charges against Darias with prejudice.

### D. All charges against Jessica should be dismissed as a result of the violation of her constitutional speedy trial rights.

The length of delay in this case weighs in favor of dismissal. Where a delay is presumptively prejudicial, a court must consider the other *Barker* factors. "A delay is 'presumptively prejudicial' if it 'approaches one year.'" *Id.* (citing *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007)). "Unlike the Speedy Trial Act, the Sixth Amendment time calculation begins 'when the defendant is arrested or indicted, whichever is earlier.'" *Pina*, 724 F. App'x at 420 (quoting *Brown v. Romanowski*, 845 F.3d 703, 712-13 (6th Cir. 2017). Jessica

was indicted on October 21, 2020. Jessica has suffered a delay of over one years which is beyond presumptively prejudicial.

The reason for the delay in this case, the second *Barker* factor, weighs in favor of dismissal. The government caused the delay by issuing superseding indictments in bad faith, as described in preceding section of this Motion.

As for assertion of her right, although Jessica has filed some motions to continue, she has not caused the primary reason for delay for her: the Second Superseding Indictment. The third *Barker* factor weights in favor of dismissal.

As for the fourth *Barker* factor, as was the case for Darias, Jessica is prejudiced by the unavailability of Jearid Irvin and the notary. Consideration of the *Barker* factors weighs in favor of a dismissal of all charges against Jessica with prejudice.

## III. CONCLUSION

Actions speak louder than words. The government claims it can prove its case without ponying up A.W. Yet despite that rhetoric, it repeatedly continued this matter in an attempt to locate its necessary witness. Understanding the reality that it stood to lose the case if it in fact proceeded to trial, it prosecuted the Defendants vindictively, using any and all means necessary to induce Darias to plead guilty. To summarize, the government's tactics include:

- Piling on additional charges and increasing the potential penalties

- █████████████████████

- Indicting Darias' loved ones

- Attempting to strong arm a plea with an unreasonable and coercive global plea offer

- Manipulating the Speedy Trial Clock

The government's behavior offends fundamental notions of fairness, shocks the conscience, and gives rise to an inference of vindictiveness. In no way does the government's conduct align with its duty to seek justice, and as such, the Court should hold the government accountable.

WHEREFORE, based on the foregoing, Darias Jackson, Jessica Brown, and Gregory Jackson respectfully ask this Court to dismiss the second superseding indictment.

Respectfully submitted,

**s/ Ravert J. Clark**
Ravert J. Clark (Reg. No. 042027)
114 East 8th St., Suite 400
Cincinnati, OH 45202
(513) 587- 2887
Notguilty14@aol.com
*Attorney for Defendant Darias Jackson*

**s/ Zenaida R. Lockard**
Zenaida R. Lockard (KY93402)
Assistant Federal Public Defender
250 East 5th St., Suite 350
Cincinnati, OH 45202
(513) 929-4834
Zenaida_Lockard@fd.org
*Attorney for Defendant Jessica Brown*

**s/ Stephanie F. Kessler**
Stephanie Kessler (0092338)
Pinales, Stachler, Young & Burrell Co., LPA
455 Delta Ave., Suite 105
Cincinnati, Ohio 45226
(513) 252-2732
skessler@pinalesstachler.com
*Attorney for Defendant Gregory Jackson*

## CERTIFICATE OF SERVICE

We hereby certify that a true and correct copy of the foregoing has been served via this Court's electronic filing system on all counsel of record on this 4th day of March, 2022.

Respectfully submitted,

**s/ Ravert J. Clark**
Ravert J. Clark (Reg. No. 042027)

**s/ Zenaida R. Lockard**
Zenaida R. Lockard (KY93402)

**s/ Stephanie F. Kessler**
Stephanie Kessler (0092338)

31