**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 1:20CR074** |
| | : | |
| **vs.** | : | **Judge Barrett** |
| | : | |
| **DARIAS JACKSON, JESSICA BROWN,** | : | |
| **AND GREGORY JACKSON** | : | |
| | : | |
| **Defendants.** | : | **HEARING REQUESTED** |

**JOINT REPLY REGARDING MOTION TO DISMISS BASED ON PROSECUTORIAL MISCONDUCT**

Darias Jackson, Jessica Brown, and Gregory Jackson, by and through counsel, and hereby,

respectfully file the following reply to the United States' Response in Opposition to Defendants'

Motion to Dismiss Based on Prosecutorial Misconduct.

Respectfully submitted,

**s/ Ravert J. Clark**
Ravert J. Clark (Reg. No. 042027)
114 East 8th St., Suite 400
Cincinnati, OH 45202
(513) 587- 2887
Notguilty14@aol.com
*Attorney for Defendant Darias Jackson*

**s/ Stephanie F. Kessler**
Stephanie Kessler (0092338)
Pinales, Stachler, Young & Burrell Co., LPA
455 Delta Ave., Suite 105
Cincinnati, Ohio 45226
(513) 252-2732
skessler@pinalesstachler.com
*Attorney for Defendant Gregory Jackson*

**s/ Zenaida R. Lockard**
Zenaida R. Lockard (KY93402)
Assistant Federal Public Defender
250 East 5th St., Suite 350
Cincinnati, OH 45202
(513) 929-4834
Zenaida_Lockard@fd.org
*Attorney for Defendant Jessica Brown*

The question to be answered now is whether the defense has met its burden such that an evidentiary hearing is required. The defense submits that it has. The unreasonably overzealous prosecution in this case presents a realistic likelihood of vindictiveness such that a dismissal of the Second Superseding Indictment is warranted.

This reply is focused on the need for an evidentiary hearing on the vindictive prosecution claim. It is worth repeating that this Court does not have to find the prosecutors in this case actually acted with an improper vindictive motive. As Chief Judge Marbley noted:

> There are two avenues by which a defendant may assert a claim of prosecutorial vindictiveness that runs afoul of the Due Process Clause. The first avenue [. . .] **the second avenue that there exists a "realistic likelihood of vindictiveness," such that prosecutorial vindictiveness should be inferred.** Bragan, 249 F.3d at 481–82.

*United States v. Georges*, No. 2:20-CR-157 (2), 2021 WL 3887183, at *2 (S.D. Ohio Aug. 30, 2021) (emphasis added). As the Sixth Circuit noted, having this second avenue "…takes into account the due process value that defendants be 'freed of **apprehension** of such a retaliatory motivation' on the part of a judge or prosecutor." *United States v. Andrews*, 633 F.2d 449, 454–55 (6th Cir. 1980) (citations omitted) (emphasis added). In contrast, "the existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case." *Id.* Moreover,

> In some cases, a trial judge would, in effect, be calling a prosecutor a liar where the prosecutor claimed inadvertence and the judge ruled against him. We do not think that such confrontations before the judiciary and the executive branch are desirable. A standard of 'realistic likelihood of vindictiveness' allows the barring of charges in appropriate situations without the need to find that the prosecutor acted in bad faith.

*Id.*

2

To succeed on a claim of realistic likelihood of vindictiveness, a defendant must meet three elements.

> To succeed via this approach, a defendant must show that: (1) the defendant exercised a protected right; (2) the prosecutor had some stake in deterring the exercise of that right; and (3) the prosecutor's conduct was somehow unreasonable.

*Id.* (citations omitted).

## I. THE DEFENDANTS HAVE MET ALL THREE ELEMENTS OF A REALISTIC LIKELIHOOD OF VINDICTIVENESS CLAIM

### 1. The defendant exercised a protected right

What protected right did Darias Jackson exercise? – right to trial

### 2. The prosecution had a stake in deterring the exercise of that right:

What is a stake? - something that you could win or lose in a game, contest, etc.[1]

What are the prosecution's stakes in this case?

    i.    Winning. The prosecution wants to ensure a conviction it could not otherwise get.

    ii.    A specific punishment (likely an upward variance) it could not otherwise get.

How does the defense know those are the prosecution's stakes?

    i.    Their conduct, as set forth in the initial Motion to Dismiss and in this Reply

    ii.    The prosecution said so in an email to all defense attorneys of record. On September 21, 2021, the prosecution indicated that its "key objective is to hold Darias Jackson responsible for shooting the victim 9 times and permanently disabling him..." Additionally, the government wanted "a guarantee of at least 15 years' imprisonment for Darias Jackson."

    iii.    The prosecution said so in its response to the motion to dismiss

---

[1] *Stake Definition*, The Britannica Dictionary, https://www.britannica.com/dictionary/stake (last visited April 23, 2022).

In its response, the prosecution wrote "Plainly, if the government wished to avoid trial, it would have <u>accepted</u> Darias's proposal. That the government rejected it shows just how strong the government's case is." (R. 153, PageID 897). Clearly, securing a conviction is not sufficient. Otherwise, they would have accepted the plea. A conviction with the opportunity to present their Guideline argument to this Court was not an acceptable result.

### 3. The prosecution's conduct was, and remains, unreasonable.

Here, the cumulative nature of the specific examples of unreasonable conduct demonstrates a realistic likelihood of vindictiveness. As the Motion to Dismiss and the prosecution's responses are lengthy, the following is intended as a summary with some explanation.

> i. **This overzealous prosecution, in its prioritization of securing a win over pursuing justice, is unreasonable and in contradiction to the role of a United States Attorney.**

According to the United States Supreme Court,

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and **whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.** As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935) (emphasis added). "The function of the prosecutor under the Federal Constitution is not to tack as many skins of victims as possible to the wall. His function is to vindicate the right of people as expressed in the laws and give those accused of crime a fair trial." *Donnelly v. DeChristoforo*, 416 U.S. 637, 648–49 1974) (Douglas, J., dissenting). A federal prosecutor does not get to decide guilt or the sentence.

      ii.    **This prosecution's conduct is particularly unreasonable and supports a realistic likelihood of vindictiveness.**

On July 16, 2020, at 11:00 am, ATF Special Agent Schaub and others executed a search warrant at the home of Jessica Brown. Related to                    , the agents found this syringe



The baby toys in the bottom left had corner are notable as would have been the pacifier on this table not captured in this photo but in others. A close up of the syringe is also informative.



It says "oral use only" on it. In addition to the syringe, the agents found a purse, in a closet, on a high shelf.



In the purse, the agents found a prescription medicine bottle and three pills.





SA Schaub, "in the presence of ATF SA Will Crayner" made an inventory of the items seized. *See Exhibit F.* Under penalty of perjury, SA Schaub swore the inventory was correct. *Id.* That inventory listed a syringe found in one room by SA Vogelpohl. It also listed "assorted pills/ecstasy" found in a closet by SA Remick-Cook.

      iii.    **It is unreasonable and a due process violation to add co-defendants to a case through superseding indictments to frustrate the speedy trial act clock.**

*See* R. 151, Page ID 571-73, 576-583.

      iv.    **The prosecution acted unreasonably in setting the terms of the package plea.**

The circumstances of this particular package plea create serious concern as to whether acceptance of it by Darias would have been meaningfully voluntary. *See* R. 151, Page ID 573-575.

      v.    **The prosecution's conduct aimed at reducing or preventing this Court from exercising its discretion in determining an appropriate sentence is unreasonable.**

The only difference between the package plea and Darias' counter-offer made at the *Lafler* hearing is whether Darias agreed to the minimum sentence the government wanted. Thus, to accomplish its objective of having Darias sentenced to at least 15 years, the government used Jessica and Greg as leverage.

9

Absent an agreed plea, the government will not be able to secure its desired minimum sentence if this Court does not agree with the government's Guidelines calculations (unless the Court found an upward variance to be appropriate). The applicable Guideline section has a cross reference which makes the offense level turn on what is the "underlying offense."[2]

Two particular jail calls are enlightening as to the purpose of A.W.'s affidavit. In a call on October 25, 2019, six days before the affidavit was signed, Darias spoke to Greg Jackson. The conversation, in part[3], was as follows:

> Greg: I talked to M.J.[4] She said she got the part of the discovery… What she got is…is that he identified you in the lineup when he woke up. .. But she sayin' at that point, he had to be on a lot of drugs and didn't really know what he was talkin' bout at the moment. She said she can pretty much just thinking it was an argument at the bar before that, that he probably thought it was you but it wasn't. So she said, wants this affidavit signed and we can come pick up the paperwork Monday to take it to him to sign. Once that signed, she gonna try to get the feds to back off the situation so that you can get a bond and get out…She is going to set the trial for February. She hopin' that the feds will back off once they see that its signed and notarized that it wasn't you.
>
> *Several minutes later*
>
> Greg: She didn't get all of the evidence. She said it's a video tape but the prosecutor done said you can't even see who on the video tape. He just said it look like the size and shape of you but she like that ain't nothing you can go on. You can't identify someone by size and shape. It's either them or it ain't.
>
> Darias: When Stick had talked to the brother,…what he saying he was going to sign it or whatever?
>
> Greg: Yeah, that's what Stick said.
>
> Greg: I am just hoping everything fall in place like that. And I hope the feds agree to […]so you can get a bond at that point.

---

[2] To start, the Guideline section for obstruction of justice is § 2J1.2. That guideline has a cross reference. If the offense involved obstructing "the investigation or prosecution of a criminal offense," then § 2X3.1 applies. That Guideline section states, in part, the base offense level is 6 levels lower than the offense level "for the underlying offense..."

[3] This is not an official transcription. This description is provided by the defense. Certain parts of the call have been omitted as irrelevant to this reply. Other words such as "uh" have been omitted for ease of transcribing and reading.

[4] M.J. Hugan, Darias defense attorney at the time.

10

*Several minutes later*

Greg: That's just shaky though. Everything he saying. . . . He not even for sure who that person was. He just know it wasn't you. Shit you wasn't no where around over there.

*A few minutes later.*

Greg: She will get it drawn up over the weekend. She said it will be at the front desk on Monday. We can come down anytime to pick it up.

Then, on a call on October 31, 2019, on the same day the affidavit was signed,

Darias: MJ just left from seeing me…whenever she get the paper work whatever she can fax it over to my PO and see how that work, see if they lift the holder or whatever

Darias has discussed the underlying offense may be the charged felonious assault. The charging decision by the state prosecutor was made absent any intervention or obstruction. Thus, the "investigation or prosecution" allegedly obstructed was felonious assault.

In contrast, the prosecution believes the underlying crime obstructed was "attempted-first-degree murder," however, they were willing to resolve the case for the lower crime of "second-degree murder." (R. 153, Page ID 882). Further, according to the prosecution, "It is difficult to fathom how a cross-reference to any guideline other than attempted murder would be appropriate given that Darias shot at A.W. nine times, nearly killing him and permanently disabling him." (R. 153, Page ID 896).

If the prosecution was confident in its Guideline calculation, then the reasonable step would have been to accept Darias' counter-offer and thereby secure their desired result. However, their decision to reject the counter-offer is punishment to Darias for pursuing this Court's involvement in calculating the Guidelines.

vi. **It is unreasonable to resolve a case to an agreed plea range that results in an upward variance.**

Had Darias accepted an agreed plea where the sentence was based on the prosecution's Guideline calculations, this Court would have been in an interesting situation if it disagreed with

those Guideline calculations. The Court would have either had to accept the plea and justify the upward variance to avoid a procedurally or substantively unreasonable sentence or reject the plea. The issue then becomes, if this Court rejects the group plea for Darias, does it reject the plea for all defendants? Although the Court has discretion to sentence Greg to the sentence suggested in the package plea, it does not have discretion to find Jessica guilty of a misdemeanor when she has been charged with a felony.

vii.    **Failing to treat Greg and Jessica on an individual basis is unreasonable.**

Although the prosecution has discretion in sentencing matters, it still must consider the guidelines and the 3553(a) factors as they apply to specific individual defendants. Here, the prosecution has only given thought to Greg and Jessica in as much as they are tools to get what they want. (*See also* R. 151, Page ID 573, R. 122, Page ID 408).

## II. AS THE PROSECUTION'S RESPONSE DOES NOT REBUT THE DEFENSE'S SHOWING, AN EVIDENTIARY HEARING IS REQUIRED

The government's legal arguments have not shifted the burden back to the defense. The claimed stake is not the avoidance of trial. Rather, it is securing a win and a specific sentencing range. This is not a normal case where the prosecution presented a plea and then proceeded to trial when the offer was rejected. This is not a case where the prosecution overzealously pursued a win and a specific sentence but, nevertheless, acted reasonably. This is a case where, rather than justice, the prosecution overzealously pursued a win and a specific sentence and, in doing so, acted unreasonably.

Further, the prosecution's factual assertions do not, at this stage, shift the burden back to the defense. First, this Court should not consider the prosecution's factual assertions at this point. The stage to address the prosecution's facts is an evidentiary hearing. As discussed in the following section, the prosecution's factual assertions are subject to testing.

12

Second, based on the pleadings, the prosecution's factual assertions to not resolve the realistic appearance of vindictiveness. As an example, the prosecution suggests that it cannot be said to have acted unreasonably in its charging decisions because it did not learn of significant evidence until February 18, 2021 when it says it obtained phone calls Darias placed from the Hamilton County Justice Center using the PIN numbers of other inmates.[5] This claim by the prosecution does not resolve the issue because this Court could conclude that the prosecution acted reasonably in securing the superseding indictments based on its investigation but then also conclude that the prosecution's other unreasonable conduct supports a realistic likelihood of vindictiveness.

## III. THERE ARE DISPUTED FACTS THAT SHOULD BE TESTED AT AN EVIDENTIARY HEARING

An evidentiary hearing is necessary in this case for two reasons. First, the next step procedurally for this vindictive claim is to have a hearing. Again, according to Chief Judge Marbley,

> [First] If the defendant can establish these elements, a court may presume an improper vindictive motive and the burden then shifts to the government to rebut the presumption with 'objective, on-the-record explanations,' including discovery of previously unknown evidence or previous legal impossibility. *LaDeau*, 734 F.3d at 566–67 (quoting *Bragan*, 249 F.3d at 482).

> [Second]Where the government fails to present evident sufficient to rebut the presumption of impropriety, the presumption will stand and require proper remedies, including dismissal. *Bragan*, 249 F.3d at 482 (citing *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)).

> [Third] If the government meets its burden, however, the defendant must prove that the offered justification is merely pretext for actual vindictiveness. *Id.*

*United States v. Georges*, at \*3. At an evidentiary hearing, the prosecution must present objective evidence, not untested subjective explanations, to rebut the defendants' claims. Then, also at the hearing, the defense can solicit facts that demonstrate the offered justification is merely pretextual.

---

[5] Despite this claim,

As an example of facts that need to be tested, the prosecution asserts that, because it secured new evidence, its conduct with regard to its charging decisions was reasonable. However, even if the prosecution did secure new evidence, if it nevertheless filed the superseding indictments when it did in order to avoid proceeding to trial without A.W. as a witness, then it acted unreasonably (and violated the defendants' due process rights in doing so). Testimony from SA Shaub, the author of most of the search warrant affidavits, about what he wrote in the affidavits and how what he wrote demonstrates the intent behind securing the search warrant is relevant to resolving the prosecutorial vindictive claim.

The second reason supporting the need for the evidentiary hearing is the existence of factual disputes.[6] The defense disputes whether the search warrants do demonstrate a good faith ongoing investigation. The discovery received after the Motion to Dismiss was filed, from the defenses' perspective, further emphasizes the realistic likelihood of vindictiveness and is useful to demonstrating whether the offered justification is merely pretext for actual vindictiveness.

## IV. CONCLUSION

For the reasons stated herein and in the Motion to Dismiss, the defendants ask this Court to dismiss the Second Superseding Indictment with prejudice. Alternatively, if this Court is either unsure of whether the defendants have met their initial burden or has concluded the prosecution has presented argument sufficient to shift the burden back to the defense, the defense requests this Court hold an evidentiary hearing.

---

[6] This is not an exhaustive list of the disputed facts. Rather, it is a demonstration of some of the disputed facts offered now to demonstrate an evidentiary hearing is necessary.

Respectfully submitted,

**s/ Ravert J. Clark**
Ravert J. Clark (Reg. No. 042027)
114 East 8th St., Suite 400
Cincinnati, OH 45202
(513) 587- 2887
Notguilty14@aol.com
*Attorney for Defendant Darias Jackson*

**s/ Zenaida R. Lockard**
Zenaida R. Lockard (KY93402)
Assistant Federal Public Defender
250 East 5th St., Suite 350
Cincinnati, OH 45202
(513) 929-4834
Zenaida_Lockard@fd.org
*Attorney for Defendant Jessica Brown*

**s/ Stephanie F. Kessler**
Stephanie Kessler (0092338)
Pinales, Stachler, Young & Burrell Co., LPA
455 Delta Ave., Suite 105
Cincinnati, Ohio 45226
(513) 252-2732
skessler@pinalesstachler.com
*Attorney for Defendant Gregory Jackson*

## CERTIFICATE OF SERVICE

We hereby certify that a true and correct copy of the foregoing has been served via this

Court's electronic filing system on all counsel of record on this 5th day of May, 2022.

Respectfully submitted,

**s/ Ravert J. Clark**
Ravert J. Clark (Reg. No. 042027)

**s/ Zenaida R. Lockard**
Zenaida R. Lockard (KY93402)

**/s/ Stephanie F. Kessler**
Stephanie Kessler (0092338)