```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF OHIO
 2                   WESTERN DIVISION
                        - - -
 3   UNITED STATES OF AMERICA,     .  Case Number 1:20-cr-74
                                    .
 4              Plaintiff,          .
                                    .  Plea Hearing
 5          - v -                   .
                                    .
 6   DARIAS JACKSON, et al.,        .  September 30, 2022
                                    .  11:55 a.m.
 7              Defendants.         .  Cincinnati, Ohio
     . . . . . . . . . . . . . . .
 8
                    TRANSCRIPT OF PROCEEDINGS
 9      BEFORE THE HONORABLE MICHAEL R. BARRETT, SENIOR JUDGE

10   APPEARANCES:

11   For the Plaintiff:

12   KELLY K. ROSSI, ESQ.
     JULIE D. GARCIA, ESQ.
13   United States Attorney's Office
     221 East Fourth Street, Suite 400
14   Cincinnati, Ohio  45202

15   For the Defendant, Darias Jackson:

16   RAVERT J. CLARK, ESQ.        JODIE DREES GANOTE, ESQ.
     114 East Eighth Street       215 East Ninth Street
17   Cincinnati, Ohio  45202      Cincinnati, Ohio  45202

18   For the Defendant, Jessica Brown:

19   ZENAIDA R. LOCKARD, ESQ.
     Federal Public Defender's Office
20   200 East Fifth Street, Suite 350
     Cincinnati, Ohio  45202
21
     For the Defendant, Gregory Jackson:
22
     STEPHANIE KESSLER, ESQ.
23   455 Delta Avenue, Suite 105
     Cincinnati, Ohio 45226
24
     Law Clerk:        Kathleen Bedree, Esq.
25   Courtroom Deputy:  Krista Zeller
     Court Reporter:    Maryann T. Maffia, RDR
```

```
 1                    P R O C E E D I N G S

 2        (Before the Court at 11:55 a.m.  All defendants present.)

 3             COURTROOM DEPUTY:  Before the Court is District Court

 4    Case 1:20-cr-074:  *United States of America versus Darias*

 5    *Jackson, et al.*

 6        And we are here today for a change of plea hearing.

 7             THE COURT:  Okay.  Will counsel enter their

 8    appearances, please, starting with the government.

 9             MS. GARCIA:  Good morning, Your Honor.  Julie Garcia

10    and Kelly Rossi for the United States.

11             THE COURT:  Okay.  Let's work our way front to back

12             MR. CLARK:  Good morning, Judge.  Jay Clark for

13    Darias Jackson.

14             THE COURT:  Darias, how you doing?

15             DEFENDANT DARIAS JACKSON:  How you doing?

16             THE COURT:  Okay.

17             MR. CLARK:  Good morning, Your Honor.  Zenaida

18    Lockard on behalf of Miss Brown.

19             MS. KESSLER:  And Stephanie Kessler on behalf of

20    Gregory Jackson.

21             THE COURT:  All right.  So I've been tendered several

22    Plea Agreements in this case.  There are some variances in the

23    Plea Agreements, material variances as a matter of fact, but

24    basically the same constitutional rights were implicated in

25    Darias and Greg's, and a separate set of constitutional rights
```

1   implicated in Jessica's, but I believe I can cover these in

2   sort of a uniform fashion unless there's any objections from

3   anybody in the case.

4       Okay.  So the first set of questions I'm going to ask is

5   directed to each of the defendants.  I will ask the question

6   and ask each defendant to indicate their answer.

7       So this case began with the filing of an Indictment.  So

8   did all three of you guys receive a copy of the Indictment, go

9   over it with your lawyers, and discuss the facts and

10  circumstances surrounding it?

11      So Darias?

12          DEFENDANT DARIAS JACKSON:  Yes.

13          THE COURT:  Greg?

14          DEFENDANT GREGORY JACKSON:  Yes, Your Honor.

15          THE COURT:  Jessica?

16          DEFENDANT BROWN:  Yes.

17          THE COURT:  Okay.  I don't want to go into the

18  specific details of the conversations, but did your lawyers

19  explain to you the maximum possible penalties if you were

20  convicted pursuant to all or any of the charges in the various

21  Indictments?

22          DEFENDANT DARIAS JACKSON:  Yes.

23          DEFENDANT GREGORY JACKSON:  Yes.

24          DEFENDANT BROWN:  Yes.

25          THE COURT:  Okay.  Then normally what happens in a

1  criminal case, as you know because we've had an extended

2  period of time, a lot of motions and things were filed, the

3  lawyers will engage in conversations with the United States,

4  the United States will supply generally the information they

5  think they could produce if there was going to be a trial in

6  the case.

7      And what typically happens is each of the lawyers would go

8  back and sit down and talk with each of you guys individually.

9  You guys would discuss your options, you would discuss

10 possible defenses, you would decide whether or not you wanted

11 to enter into plea negotiations where you would decide whether

12 or not you wanted to go to trial.

13     Without getting into the details of those conversations,

14 Darias, did you have such conversations with Jay?

15         DEFENDANT DARIAS JACKSON:  Yes.

16         THE COURT:  Greg with Stephanie?

17         DEFENDANT GREGORY JACKSON:  Yes.

18         THE COURT:  Jessica with Zenaida?

19         DEFENDANT BROWN:  Yes.

20         THE COURT:  Okay.  Do I now understand that based

21 upon those conversations -- and all of you could say "not

22 guilty" if you wanted to, and we would have a trial.  We all

23 know that, right?  Okay.  But I understand, based upon the

24 various conversations you've had, that you wish to in some --

25 well, in all cases, withdraw the previously-entered pleas of

1    not guilty and entered a plea of guilty to the various counts

2    in the various Plea Agreements.

3       Darias; is that correct?

4          DEFENDANT DARIAS JACKSON:  Yes.

5          THE COURT:  Stephanie?

6          DEFENDANT GREGORY JACKSON:  Yes.

7          THE COURT:  I'm sorry, Greg.  Greg, yes.  Thank you.

8       Jessica?

9          DEFENDANT BROWN:  Yes.

10         THE COURT:  Just so I'm clear, and we'll get to the

11   Information-versus-Indictment discussion in a moment, but just

12   so I'm clear --

13       So Darias, that means that you are intending to plead

14   guilty to Counts One, Two, and Six of the Second Superseding

15   Indictment, Possession of Ammunition by a Prohibited Person,

16   Conspiracy to Commit an Offense Against the United States, and

17   Conspiracy to Tamper with a Witness.

18       Is that your understanding?

19         DEFENDANT DARIAS JACKSON:  Yes.

20         THE COURT:  Okay.

21      Greg, in your case you are talking about Counts Six and

22   Seven of the Second Superseding Indictment, which are

23   Participating in a Conspiracy to Tamper with a Witness, and

24   Witness Tampering.

25       Is that your understanding?

1        DEFENDANT GREGORY JACKSON:  Yes.

2        THE COURT:  And Jessica, in your case, and we're

3   going to go over this in detail when we get there.  In your

4   case, just to summarize quickly, it's a one-count Indictment

5   for a misdemeanor, a violation of 18 U.S.C. 201(c)(2), which

6   is providing, I guess, an improper assistance to a witness.

7      Is that a fair summary?

8        MS. GARCIA:  Yes, Your Honor.  Just to clarify, she

9   is pleading guilty to a violation of 18 United States Code

10  Section 3, which is the Accessory After The Fact, and she's

11  agreeing that she's an Accessory After the Fact to a violation

12  of 18 United States Code Section 201(c)(2).  So the Accessory

13  After the Fact part is what makes it a misdemeanor.

14        THE COURT:  Okay.

15      Is that your understanding, Zenaida and Jessica?

16        DEFENDANT BROWN:  Yes.

17        MS. LOCKARD:  Yes, Your Honor.

18        THE COURT:  Okay.  First, let's go through a couple

19  of things.  So counsel want to make a joint motion to withdrew

20  the previously-entered pleas of not guilty and enter pleas of

21  guilty to what we've just discussed?

22        MR. CLARK:  Yes, Judge.

23        MS. KESSLER:  Yes.

24        MS. LOCKARD:  Yes, Your Honor.

25        THE COURT:  Okay.

1      Darias, how do you wish to plea to the charges that I've

2  just summarized?

3          DEFENDANT DARIAS JACKSON:  Guilty.

4          THE COURT:  Greg?

5          DEFENDANT GREGORY JACKSON:  Guilty.

6          THE COURT:  And Jessica?

7          DEFENDANT BROWN:  Guilty.

8          THE COURT:  Jessica, can you do me a favor?  Would

9  you move that way a little bit?  Because I'm looking at three

10  sets of plastic, and there's, like, four of you.  Just a bit

11  over.  That's fine.

12          DEFENDANT BROWN:  Okay.

13          THE COURT:  Let me just go over a couple of things

14  just to make sure that we're all on the same page.  One

15  question I have to ask, even though I already know the answer,

16  but I have to ask it.

17      Darias, you were born in the United States and are a

18  citizen and not subject to any deportation proceedings; is

19  that correct?

20          DEFENDANT DARIAS JACKSON:  Yes.

21          THE COURT:  Same question, Greg?

22          DEFENDANT GREGORY JACKSON:  Yes.

23          THE COURT:  Jessica?

24          DEFENDANT BROWN:  Yes.

25          THE COURT:  Okay.  So I'm just going to go through

1  this a little bit one at a time because I just have to make a

2  finding on the record that you guys all know what you're

3  doing.

4      So Darias, just tell me a little bit about your education,

5  how far you got in school, and things like that.

6          DEFENDANT DARIAS JACKSON:  Graduated high school,

7  made it to the twelfth grade.

8          THE COURT:  Where did you go to high school?

9          DEFENDANT DARIAS JACKSON:  Taft.

10          THE COURT:  You went to Taft.  Okay.  All right.

11  We've been talking about the Indictment.  We're going to be

12  talking about the Plea Agreement.  In Jessica's case, we're

13  going to be talking about the Information.

14      Darias, in your case, any problems reading the Indictment

15  or the Plea Agreement or understanding them?

16          DEFENDANT DARIAS JACKSON:  No, sir.

17          THE COURT:  If you had questions about legally what

18  could happen as a result of that, did you have a conversation

19  with Jay and did he explain the answers to you?

20          DEFENDANT DARIAS JACKSON:  Yes.

21          THE COURT:  Okay.  This also sounds like a stupid

22  question because you're being held, but have you taken any

23  kind of illegal medication, narcotics, alcohol, or actually

24  any prescribed medicine in the last 48 hours that impacts upon

25  your ability to understand the conversation you and I are

1    having?

2            DEFENDANT DARIAS JACKSON:  No.

3            THE COURT:  Okay.

4        So Greg, how far did you go in school?

5            DEFENDANT GREGORY JACKSON:  I went to high school and

6    did some college.  I graduated high school.

7            THE COURT:  Did you go to Taft also?

8            DEFENDANT GREGORY JACKSON:  No.  I went to Western

9    Hills High School.

10            THE COURT:  Okay.  And where did you go to college?

11            DEFENDANT GREGORY JACKSON:  Cincinnati State.

12            THE COURT:  Okay.  All right.  But you heard the

13    questions I asked Darias.  No problem reading the Indictment,

14    the charging instruments, or the Plea Agreement, right?

15            DEFENDANT GREGORY JACKSON:  Yes, Your Honor.

16            THE COURT:  Same question I asked Darias.  If you had

17    any questions about the legal ramifications or impact of these

18    documents upon your life, did you talk to Stephanie and did

19    she give you the answers?

20            DEFENDANT GREGORY JACKSON:  Yes.

21            THE COURT:  Okay.

22        So Jessica, how about you?

23            DEFENDANT BROWN:  I went to Robert A. Taft.  I'm a

24    nurse, so I went to college.

25            THE COURT:  Okay.  So no problem reading, writing,

1    and understanding documents?

2           DEFENDANT BROWN:  No.

3           THE COURT:  Okay, good.

4      Greg, I forgot to ask you.  You're out on bond.  Have you

5    had any drugs, alcohol, whether prescribed, unprescribed or

6    whatever, in the last 24 to 48 hours that affects your ability

7    to engage in this conversation you and I are having now?

8           DEFENDANT GREGORY JACKSON:  No, I haven't.

9           THE COURT:  Okay.

10     So Jessica, you can read the documents and all that and

11    you're fine.  If you had questions about any of the legal

12    ramifications, did you have a conversation with Zenaida and

13    did she explain it to you?

14           DEFENDANT BROWN:  Yes.

15           THE COURT:  And we'll get to it a little bit down the

16    road, but did she explain to you the differences between

17    proceeding under the Indictment that was actually filed or the

18    Information that you're proposing to proceed under now?

19           DEFENDANT BROWN:  Yes.

20           THE COURT:  Okay.  We'll get into that.

21     Jay, you've had a lot of conversations with Darias over

22    the -- many years.  Do you have any doubt as to his competency

23    to enter this plea at this time?

24           MR. CLARK:  No, Your Honor.

25           THE COURT:  Stephanie, same question for you and

1    Greg?

2              MS. KESSLER:  No.

3              THE COURT:  And Zenaida?

4              MR. CLARK:  No, Your Honor.

5              THE COURT:  Okay.  All three of you guys, whether we

6    proceeded under the original Indictment or upon the

7    Information, would have a right to a jury trial.  I just want

8    to make sure you guys understand what that means.

9         Because when I get to the Information part, Jessica, I'll

10   explain to you that you would have the same right to plead not

11   guilty to that if it was accepted.  You've already told me you

12   don't want to, you want to enter a plea of guilty.

13        But I just want to make sure all you guys understand the

14   rights you're giving up.  So if you wanted to persist in your

15   not guilty plea, you would have a jury trial.  I think that

16   was actually set for, like, next month or whatever.  But we

17   had it set, so you all know you would have a right to a trial.

18        Obviously, you would have a right to be represented by

19   counsel.  You've been represented by counsel throughout these

20   proceedings, and they have filed various motions on your

21   behalf.  So you're aware that counsel engages in that kind of

22   back-and-forth with the government and attempts to exclude

23   evidence that they don't think is proper or should be

24   excluded, things like that.

25        At the trial itself, a couple of things happen.  We select

1    a jury, and all three people are involved in the jury

2    selection; that means Darias, Greg, and Jessica.  Your lawyers

3    have the right to ask the jurors questions to try to seat a

4    fair and impartial jury just like the United States does.  So

5    they participate in what we call the *voir dire* process, the

6    jury selection.

7         They also have the ability to make an opening statement if

8    they think it's appropriate.  Sometimes it is.  Sometimes it

9    isn't.  Sometimes I've seen lawyers not give an opening

10   statement because they think it's not the smartest thing to

11   do.  But, in any event, they have that ability to do that.

12        At the end of the case, they'd participate in the drafting

13   of the jury instructions that I would read to the jury at the

14   end of the case.  And I think almost all the time the lawyers

15   make a closing argument.  They certainly have that.

16        All of that is interesting, but the most important thing

17   that I think lawyers do during the course of a trial is that

18   anybody that would take the witness stand against you, they

19   would have the right to ask them questions to kind of shake

20   their appearance and believability or credibility in front of

21   a jury.  We call that cross-examination.

22        Are you guys generally familiar with how that whole

23   process works, and have you ever -- I don't know if you've

24   ever seen a real trial or not, but are you generally familiar

25   with how that happens?

1    Darias?

2         DEFENDANT DARIAS JACKSON:  Yes.

3         THE COURT:  Greg?

4         DEFENDANT GREGORY JACKSON:  Yes.

5         THE COURT:  Jessica?

6         DEFENDANT BROWN:  Yes.

7         THE COURT:  Okay.  A couple of important rights.  You

8    have what's called a presumption of innocence.  That means

9    that as the 12 people sit over there, that they have to look

10   at you and presume that you are innocent of the charges that

11   are brought against you.  That presumption of innocence stays

12   with you through the entire trial.  And every time we take a

13   break during a trial, whether it's a civil case or a criminal

14   proceeding, I say, "Folks, do not make up your mind because

15   you have to make up your mind in conjunction with discussion

16   with the other jurors."  So I tell them to keep an open mind

17   throughout the case.

18       At the end of the case, I tell them that the government's

19   burden of proof is beyond a reasonable doubt, that they have

20   to prove each and every one of the elements charged to obtain

21   convictions on those particular counts.  The presumption of

22   innocence stays with you unless all 12 people go in the back,

23   they discuss the case, and they unanimously agree that you

24   have, in fact, committed the crimes the government has

25   alleged.  So it stays with you up until that point of time.

1       You guys all understand that?

2               DEFENDANT DARIAS JACKSON:  Yes.

3               THE COURT:  Greg?

4               DEFENDANT GREGORY JACKSON:  Yes.

5               THE COURT:  Jessica?

6               DEFENDANT BROWN:  Yes.

7               THE COURT:  A couple other valuable rights.

8  Typically in a situation, as you know up to today's point in

9  time, nobody could make you admit you committed a crime.  You

10 don't have to say anything.  In a situation of a plea, what's

11 going to happen is, in a few moments we're going to get to the

12 Statements of Fact that are attached to the Plea Agreements.

13 I have read each and every one of those prior to today's date,

14 and at some point I'm going to ask you whether or not the

15 Statement of Facts is accurate.  If you say "Yes," what's in

16 the Statement of Facts constitutes the various crimes that you

17 guys have been alleged to commit as it relates to the Plea

18 Agreement.  So if you say "Yes, it's true," that means you are

19 willing to admit the particular offenses that are outlined in

20 the Statement of Facts.

21      Do you understand that, Darias?

22              DEFENDANT DARIAS JACKSON:  Yes.

23              THE COURT:  Are you okay with that?

24              DEFENDANT DARIAS JACKSON:  Yes.

25              THE COURT:  Stephanie and Greg?

1            DEFENDANT GREGORY JACKSON:  Yes.

2            THE COURT:  Jessica and Z?

3            DEFENDANT BROWN:  Yes.

4            THE COURT:  Okay.  Are you willing to give up those

5 rights that we've just talked about and proceed with the plea

6 arrangement in this case?

7            DEFENDANT DARIAS JACKSON:  Yes.

8            THE COURT:  Let's switch gears now just for a second.

9    Jessica, you're in a slightly different ball game because

10 we're going to proceed by Information.  So the actual

11 Information --

12    And Julie, correct me if I misstate anything.

13    The actual Information, it's a Superseding Information,

14 and it's a violation of 18 U.S.C. 3 -- what is it, three or

15 201(c) --

16            DEFENDANT BROWN:  201(c) -- I'm sorry.

17            MS. GARCIA:  The alleged violation is of Section 3,

18 and then the object of the being an Accessory After the Fact

19 is the 201 violation.  So, in other words, she was an

20 Accessory After the Fact to the 201 violation.

21            THE COURT:  Got it.

22    In any event, Jessica, when I was talking about elements,

23 these are the things that make up a particular offense.  In

24 this case, the elements the government would have to prove

25 would be, first, that you knew someone else had already

1   committed a crime, providing an illegal gratuity to a witness,

2   and that someone had offered a promise to give money to a

3   person named A.W. --

4        Oh.  I just thought of something.  Well, I didn't think of

5   something.  Krista just thought of something, or you guys

6   thought of something.

7        Tell me how you want to handle this.  Normally I swear in

8   defendants before we go through the allocution on this.  I did

9   not in this case.  I'm happy to swear them in now and just ask

10  if their previous comments have been accurate under the

11  potential penalties of perjury, and I'll ask you guys, all you

12  guys, if that would be satisfactory at this point.

13            MS. GARCIA:  Yes, that's fine with the government,

14  Your Honor.

15            THE COURT:  Good catch.  Is that Kelly?

16            MS. ROSSI:  Yeah, it was.

17            THE COURT:  I'm sorry.

18       Okay.  So what I'm going to do is, I'm going to ask Krista

19  to administer an oath or affirmation to each individual

20  defendant.  You can stay seated for it.  It's okay.

21       But raise your right hand.  Darias first.

22  (Defendant Darias Jackson was duly sworn by the courtroom

23  deputy.)

24            DEFENDANT DARIAS JACKSON:  I do.

25            THE COURT:  Greg?

1   (Defendant Gregory Jackson was duly sworn by the courtroom

2   deputy.)

3          DEFENDANT GREGORY JACKSON:  Yes, I do.

4   (Defendant Jessica Brown was duly sworn by the courtroom

5   deputy.)

6          DEFENDANT BROWN:  I do.

7          THE COURT:  Okay.  So Darias, you have just taken an

8   oath that anything that you would say from here on out would

9   be true under the possible penalties of perjury, but I'd like

10  to ask you:  You and I have had a conversation for the last 10

11  or 15 minutes about various items.  Were all of those answers,

12  subject to the penalties of perjury, true and honest to your

13  best belief?

14         DEFENDANT DARIAS JACKSON:  Yes.

15         THE COURT:  Greg, same thing.  I don't necessarily

16  want to repeat everything we've talked about, but I've had a

17  number of conversations with you over the last few minutes.

18  You have just now taken an oath which means you have agreed to

19  tell the truth going forward.  Are you willing to indicate

20  under oath that the answers you've given to the questions

21  previously submitted to me have been true subject to penalty

22  of perjury?

23         DEFENDANT GREGORY JACKSON:  Yes.

24         THE COURT:  Jessica, again, I don't want to repeat

25  all the questions if I don't have to.  From this point

1  forward, you're obligated to tell the truth.  And I'm going to

2  ask you, under oath:  Are you willing to state that the

3  answers you've previously given to the questions I've been

4  asking are true and accurate subject to penalty of perjury?

5          DEFENDANT BROWN:  Yes.

6          THE COURT:  Do you guys, Kelly and Julie, think that

7  takes care of the record?

8          MS. GARCIA:  Yes, Your Honor.  Thank you.

9          THE COURT:  Okay.  Where was I?  Oh, Information.

10      So in this case -- okay.  Then the next element would be

11  that the defendant helped a person to avoid being arrested,

12  prosecuted, or punished.  In this case, it would be

13  prosecuted, so that's what we're talking about.  Third, that

14  the defendant did so with the intent to help that person avoid

15  being arrested, prosecuted, or punished.  Okay.  So that is

16  what you're talking about.  Okay?

17          DEFENDANT BROWN:  Okay.  Yes.

18          THE COURT:  Those would be the elements they would

19  have to prove.  The possible penalties of that -- and we're

20  going to get to Darias and Greg in just a minute.  But the

21  possible penalties for that are up to one year imprisonment,

22  one year supervised release, and a 125,000-dollar fine.  Do

23  you understand those are possibilities, Jessica?

24          DEFENDANT BROWN:  Yes.

25          THE COURT:  Okay.  Restitution?  It's -- well, there

```
 1   is a possibility for restitution and forfeiture if those come
 2   into play in this case, and there is also a 100-dollar special
 3   assessment.  Okay?
 4          MS. LOCKARD:  Your Honor, may I have just a moment?
 5          THE COURT:  Yeah, of course.
 6   (Ms. Lockard and Defendant Brown confer privately.)
 7          THE COURT:  Okay.  Is there a question for me or --
 8          DEFENDANT BROWN:  No.
 9          THE COURT:  Do you understand those are the possible
10   penalties?
11          DEFENDANT BROWN:  Yes.
12          THE COURT:  You previously discussed those with
13   Zenaida, right?
14          DEFENDANT BROWN:  Yes.
15          THE COURT:  Okay.  In a few moments when we talk
16   about guideline sentencing, we'll talk about the impact of the
17   Plea Agreement upon that.  Okay?
18          DEFENDANT BROWN:  Okay.
19          THE COURT:  But we're going back to the Information.
20      So you guys waive further reading of the Information in
21   court, Zenaida?
22          MS. LOCKARD:  Yes, Your Honor, we do.
23          THE COURT:  Are you satisfied with that, guys?
24          MS. GARCIA:  Yes, Your Honor.
25          THE COURT:  All right.
```

1      So you've received a copy of the Information, we've been

2  talking about what's contained in it, and you've discussed it

3  with Zenaida, correct?

4          DEFENDANT BROWN:  Yes.

5          THE COURT:  And she has explained to you the possible

6  penalties we've talked about as well as the nature and the

7  meaning of the charge?

8          DEFENDANT BROWN:  Yes.

9          THE COURT:  Okay.  As you know from your prior

10  experience, if the government wanted to they could proceed by

11  an Indictment, which means the case would have to be presented

12  to a grand jury.  Let me just tell you a little bit about how

13  that works.

14      A grand jury is composed of at least 16 people, not more

15  than 23.  And 12 of those persons present, when they hear the

16  presentation of evidence, have to conclude that there is

17  probable cause to believe that a crime has been committed and

18  probable cause to believe that you're the person who committed

19  that crime.  If that's happened, if they agree on that based

20  upon the evidence presented, then they return what's called a

21  true bill, which is an Indictment.

22      In this case, what we're talking about is that you're

23  going to give up the right to have any further presentations

24  to a grand jury and you're willing to proceed by the charge

25  that's contained in the Information in this case.

1            Are you okay with that?

2            DEFENDANT BROWN:  Yes.

3            THE COURT:  Okay.  You would have the same

4    constitutional rights.  As I said earlier, you would have the

5    right to plead not guilty and insist on a trial.  And you

6    understand that, right?

7            DEFENDANT BROWN:  Yes.

8            THE COURT:  And I think this is where I got off

9    track.  But are you willing to give up those rights we've

10   already talked about as it relates to a trial and proceed with

11   the Plea Agreement in this case?

12           DEFENDANT BROWN:  Yes.

13           THE COURT:  Okay.  I think that's where I got off

14   track before, guys, and now we're back on that.

15       Okay.  So Zenaida, have you also had a conversation with

16   Jessica about her rights?

17           MS. LOCKARD:  I have, Your Honor.  I do think that --

18   I meant to bring this up, and I neglected to do so.  I do

19   think the special assessment may be less for a misdemeanor.  I

20   think it's 25, but don't quote me on the exact amount.  I just

21   know it's not $100.

22           THE COURT:  It is a lesser number.  It could be --

23   I'm thinking it -- I don't know if Probation knows off the top

24   of their head, or Pretrial, but I'm thinking --

25           MS. LOCKARD:  The statute says it's 25 if it's a

1  Class A, ten if it's a Class B, and five if it's a Class C.  I
2  think this is a Class A, so I would think it's 25, but I'm not
3  a hundred percent certain on that.
4          THE COURT:  So you're okay with that one way or the
5  other, right?
6          DEFENDANT BROWN:  Yes.
7          THE COURT:  Are you willing now to give up your
8  rights to have the one count specified in the Information, are
9  you willing to give up your rights to have that presented to a
10  grand jury and are you willing to proceed with the Information
11  document that's been previously filed with the Court?
12          DEFENDANT BROWN:  Yes.
13          THE COURT:  And Zenaida should have handed you a
14  document which indicates your intent and agreement to do that.
15      Zenaida, do you want to just hand that up if you don't
16  mind?
17          MS. LOCKARD:  Yes, Your Honor (Handing).
18          THE COURT:  Thanks.  Thank you.
19      Jessica, I was watching when Zenaida handed you this
20  before, but just for the record where it says "Jessica Brown,"
21  is that, in fact, your signature?
22          DEFENDANT BROWN:  Yes.
23          THE COURT:  Okay.
24      Based upon my conversations with Jessica, I determine that
25  she has knowingly, intelligently, and voluntarily waived her

1    right to have the case presented to a grand jury for

2    Indictment, and she has agreed to proceed by consent to the

3    Information that's been filed in the case.  Okay.

4        And I think you previously said this, but it is your

5    intent to enter a plea of guilty to that Information, correct?

6            DEFENDANT BROWN:  Correct.

7            THE COURT:  So I have gone over the possible

8    penalties with Jessica.  I'm going to do that with Darias now

9    and then Greg.

10       So Darias, the possible penalties for Count One, which is

11   Possession of Ammo by a Prohibited Person, the possible

12   penalties for that are up to ten years in prison, three years'

13   supervised release, and a 250,000-dollar fine.  Do you

14   understand all that?

15           DEFENDANT DARIAS JACKSON:  Yes.

16           THE COURT:  Okay.  Again, possible restitution,

17   forfeiture if appropriate, and this is a felony so it's a

18   100-dollar special assessment.  Okay?

19           DEFENDANT DARIAS JACKSON:  Mm-hmm.

20           THE COURT:  All right.  And the possible penalty for

21   Count Two is up to five years' imprisonment, three years'

22   supervised release, a 250,000-dollar fine.  Okay?

23           DEFENDANT DARIAS JACKSON:  Yes.

24           THE COURT:  And, again, restitution, forfeiture, and

25   a 100-dollar special assessment.  Fair enough?

1          DEFENDANT DARIAS JACKSON:  Yes.

2          THE COURT:  Okay.  The statutory penalties for Count

3    Six are up to 20 years' imprisonment, three years' supervised

4    release, and a 250,000-dollar fine.  Okay?

5          DEFENDANT DARIAS JACKSON:  Yes.

6          THE COURT:  And we'll talk about the supervised

7    release violation in a minute when we get to the Plea

8    Agreement.  But absent any arrangement between counsel, those

9    penalties could be technically imposed consecutive, which

10   means back to back to back, or they could be imposed

11   concurrently, which means they all run at the same time.  Are

12   you okay with that?

13         DEFENDANT DARIAS JACKSON:  Yes.

14         THE COURT:  Okay.

15     Then Greg- --

16         MS. GARCIA:  Your Honor, I'm sorry to interrupt.

17   Just one more thing on Count Six.  That one also has the

18   potential for restitution, forfeiture, and the mandatory

19   100-dollar special assessment.

20         THE COURT:  I thought I asked him that, didn't I?

21         MS. GARCIA:  I think it was only for --

22         THE COURT:  Anyway, the possibility of restitution,

23   forfeiture, and the 100-dollar special assessment do apply to

24   you.  Okay?

25         DEFENDANT DARIAS JACKSON:  Yes.

1    THE COURT:  Thanks, Darias.

2    Greg, as to you, we talked about you're willing to plead

3    guilty to Counts Six and Seven of the Second Superseding

4    Indictment.  We'll talk about what's in the Plea Agreement

5    when we get there, but for right now the possible penalties

6    are up to 20 years in prison for each of those counts, Count

7    Six or Seven, up to 20 years in prison.  Okay?

8    DEFENDANT GREGORY JACKSON:  Yes.

9    THE COURT:  Okay.  Three years' supervised release

10   and a 250,000-dollar fine.  Okay?

11   DEFENDANT GREGORY JACKSON:  Yes.

12   THE COURT:  And restitution, forfeiture if

13   appropriate.  Okay?

14   DEFENDANT GREGORY JACKSON:  Okay.  Yes.

15   THE COURT:  And a mandatory 100-dollar special

16   assessment, two counts, so $200.

17   In Darias's case, three counts, $300.  Okay?

18   DEFENDANT GREGORY JACKSON:  Yes.

19   THE COURT:  And just like Darias, technically those

20   could be imposed by me either consecutive -- and we'll talk

21   about what's in the Plea Agreement in a minute.  But

22   technically they could be back to back, consecutive, or they

23   could run at the same time, concurrent.  Okay?

24   DEFENDANT GREGORY JACKSON:  Yes.

25   THE COURT:  All right.  Oh, another thing.  I don't

1  think this applies to Jessica because it's a misdemeanor, but

2  because you two guys, Darias and Greg, are pleading to

3  felonies, you are then deemed under the eyes of the law as a

4  prohibited person which, as we know from the charges in this

5  case, means you're not allowed to own, use, possess firearms,

6  dangerous ordnances, ammunition, or destructive devices.

7        Do you understand that, Darias?

8              DEFENDANT DARIAS JACKSON:  Yes.

9              THE COURT:  Greg?

10             DEFENDANT GREGORY JACKSON:  Yes.

11             THE COURT:  There may be other things that come out

12  of this down the road, and this goes to all three of you guys.

13  It's possible in job applications or applications --

14       Well, this doesn't apply to Jessica because it's a

15  misdemeanor.  Never mind.

16       This applies to Darias and Greg.  If you're asked a

17  question on any kind of official questionnaire "Have you ever

18  been convicted of a crime punishable by a year or more in

19  prison?" which is a felony, you have to answer "Yes."  Are you

20  guys okay with that?

21             DEFENDANT DARIAS JACKSON:  Yes.

22             DEFENDANT GREGORY JACKSON:  Yes.

23             THE COURT:  All right.  So let's talk about the

24  actually sentencing in this case when we get to it, which will

25  probably be several weeks down the road at least.

1       Under the Sentencing Reform Act of 1984, Congress tried to

2  organize a system for judges like me, lawyers like you guys,

3  and clients like you guys to understand what potential

4  sentences in criminal cases were.  So in order to do that,

5  they put together a book called the *Sentencing Guidelines*

6  *Manual* under the direction of the United States Sentencing

7  Commission.  What the *Guidelines Manual* did was it took a look

8  at all the federal statutes and for each one assigned a number

9  of points for the statute itself.  That's called the Base

10  Offense Level.  Then they also put in the means of calculating

11  various things which could enhance a potential sentence.

12       An example, in a drug case, the amount of drugs can make

13  the point level rise.  In a white-collar or a theft case, the

14  amount of money stolen can make things rise.

15       There are a number of things that can add to these

16  enhancements.  There's a number of things that can also reduce

17  things, such as acceptance of responsibility and entering a

18  plea in a case.

19       But at the end of the day, the Probation Office will do a

20  calculation for each of you guys.  In that calculation, they

21  are going to have an Adjusted Offense Level assigned to the

22  particular counts in the case.  Then they're also going to run

23  a criminal history.  A criminal history can be anywhere from

24  Roman numeral I, which is little or none, up to VI, which is

25  sort of, you know, major offender, career-type activity.

1    So there's a Sentencing Guidelines chart which is

2    contained in the Manual, and it's a diagram.  There's an

3    intersection between the Criminal History Category and the

4    Adjusted Base Offense Level.  What that intersection then does

5    is express in a number of months the recommended sentence for

6    me to impose upon each one you guys.

7    Up until about 12 or 14 years ago, if the Probation

8    Department did their homework correctly I was obligated to

9    impose a sentence within that structure.  Now the Supreme

10   Court says, or then the Supreme Court says, and it still

11   applies now:  Not so fast, Judge.  You can look at any factor

12   that's relevant.

13   We generally call them the 18 U.S.C. 3553 factors, but

14   any relevant factor that you guys bring to my attention or the

15   government brings to my attention to make a case get more

16   serious or less serious.  At the end of the day, I've got a

17   fair amount of discretion when it comes to sentencing.

18   You guys all have had general conversation with your

19   lawyers about that and understand where it's going?

20          DEFENDANT DARIAS JACKSON:  Yes.

21          DEFENDANT GREGORY JACKSON:   Yes.

22          DEFENDANT BROWN:  Yes.

23          THE COURT:  Okay.  Now, normally, I would say here --

24   because I used to do what these guys do.  You know, the

25   clients always say, "What's it look like?"  Normally, I would

1  say, "I haven't a clue until the presentence investigation

2  comes back.

3      This case is slightly different.  Okay?

4      So in Darias's case, it's a Rule 11(c)(1)(A) plea, which

5  means that is true as it relates to the impact of the counts

6  he's pleading to, but there is an agreement in the Plea

7  Agreement, a couple of things.  There is the supervised

8  release violation pending.  We all that know that.  The

9  government has agreed that if I decide that any sentence is

10 appropriate in that, it will run concurrently with the

11 underlying sentence in this case.

12      Now, Darias, I want you to understand this.  Just because

13 they say they're going to do that, if I thought that's just

14 not right I could ignore that and go forward and make it

15 consecutive.  But I think Jay will probably tell you, and the

16 government would confirm, that any time the lawyers agree on

17 that type of a situation, even though I don't have to I've

18 never failed to follow it.  But I just need you to understand

19 I don't have to.  Okay?

20          DEFENDANT DARIAS JACKSON:  Yes.

21          THE COURT:  Okay.  And there is also an agreement

22 with the state court in this case.

23      Jay, do you want to talk about that at all, or not?

24          MR. CLARK:  Judge, I guess I can just acknowledge

25 that any exposure to the state court charges that Darias would

1  have has been made part and parcel of the Plea Agreement by

2  Mark Piepmeier, the Chief Assistant's signature on the Plea

3  Agreement.

4          THE COURT:  Okay.  And you're comfortable with that

5  and you've explained that to Darias?

6          MR. CLARK:  I have.

7          THE COURT:  Okay.

8      Greg, in your case we've gone over what the possible

9  penalties are, but in your case there is a recommendation --

10  the government indicates they're going to make a

11  recommendation to me that would, at the end of the day, that I

12  give you a term of five years' probation on each of the

13  counts, and that five years will run together.  We'll talk

14  about probation and supervised release in just a minute.

15      But just as I was saying with Darias, even though they're

16  saying that's what they're going to recommend, if I thought

17  that's not right I could reject that and do what I wanted to

18  do.  But I will say the same thing I just said a minute ago.

19  I have never failed to follow a joint recommendation of both

20  sides.  Okay?

21          DEFENDANT GREGORY JACKSON:  Yes.

22          THE COURT:  Okay.  You understand, though, I don't

23  have to follow it if I don't want to?

24          DEFENDANT GREGORY JACKSON:  I do, Your Honor.

25          THE COURT:  Okay.  Good.

1        And then Jessica, in your case, the recommendation -- if I

2    can find it.  Okay.  In that case, the government has

3    indicated they agree to recommend probation.  Okay?

4            DEFENDANT BROWN:  Mm-hmm.

5            THE COURT:  Same thing you heard me talking to these

6    guys.  I don't have to do that if I don't think it's

7    appropriate.  I could impose up to that year in prison.  Okay?

8            DEFENDANT BROWN:  Yes.

9            THE COURT:  Okay.  But I've never failed to follow a

10   recommendation.  Are you okay with that?

11           DEFENDANT BROWN:  Yes, sir.

12           THE COURT:  But you understand I don't have to?

13           DEFENDANT BROWN:  Yes.

14           THE COURT:  Okay.

15       Do you think I've covered that okay?

16           MS. GARCIA:  As to the sentencing recommendations?

17           THE COURT:  Yes.

18           MS. GARCIA:  Yes, Your Honor.  Thank you.

19           THE COURT:  Okay.

20       All right.  So at the end of the day, the presentence

21   investigations will come back, I will look at those, and we'll

22   talk about presentence investigations more in a minute.  But

23   let's talk about supervised release and probation.

24       Okay.  So supervised release as it relates to the front

25   row and probation as it relates to the second row are both

1  handled by our Probation Department.  I don't know if you guys

2  have been on any type --

3      Well, that's another thing that I forgot to ask earlier.

4      Jay, you said you've got the state court stuff taken care

5  of, right?

6              MR. CLARK:  Yes, sir.

7              THE COURT:  Do any one of you guys, Darias, Greg or

8  Jessica, have any other pending charges anywhere that a guilty

9  plea in this case could adversely affect?

10             DEFENDANT DARIAS JACKSON:  No.

11             DEFENDANT BROWN:  No.

12             DEFENDANT GREGORY JACKSON:  No.

13             THE COURT:  Okay.  Good.  All right.  Where was I?

14  Okay.  So whether it's supervised release or probation, you're

15  going to have to report to a probation officer.  They are

16  going to have several rules and regulations that they're going

17  to ask about.  The first and foremost is not to possess any

18  firearms, dangerous ordnances, things like that.

19      Even though for you, Jessica, I don't think that's a

20  lifetime ban, it will be a ban during the period of probation.

21  I don't think a misdemeanor excludes her from that later on,

22  but it will be part of probation.  Okay?

23             DEFENDANT BROWN:  Yes.

24             THE COURT:  Okay.  Also, obviously, no illegal

25  controlled substances and no new federal, state, or local

1    crimes.

2         Then also when they do the PSI, there will be other

3    things they look at.  I don't know if -- I think Greg was here

4    a few minutes ago when I was going through the other earlier

5    defendant's background, drug history, stuff like that.  I

6    think you saw that I ordered testing and things like that.

7    So depending on what the Probation Department thinks is

8    necessary to help you guys down the road, there may be other

9    recommendations.

10        So what happens when somebody is on probation or

11   supervised release.  It's slightly different.  Okay.  So when

12   you're on supervised release, if there is a violation -- and

13   there's all kinds -- there are a number of categories of

14   violations.  Sometimes it's minor stuff that the Probation

15   Department will talk to you directly, and they'll just say,

16   "We'll take care of this."  Sometimes it's minor stuff.  They

17   want to make a record with me, so they send what's called a No

18   Action report that says, you know, one of you guys had a

19   problem, but we've worked it out, we're okay, we don't have to

20   do anything.

21        But if you catch a new case, if you've got, you know, more

22   serious drugs in your system, things like that when they do

23   urine samples, they may end up filing a violation report.  So

24   if a violation report gets filed, one of two things happen.

25   First thing that happens is we have to have a hearing to

1    decide whether or not you are in violation of the terms of

2    supervised release or probation.  If the answer is yes, then I

3    have to figure out what I do.  I could, theoretically,

4    sentence you to prison --

5        In your case, Darias, for the whole term of supervised

6    release, although again there is a guideline calculation and a

7    recommendation.  Are you okay with that?

8            DEFENDANT DARIAS JACKSON:  Yes.

9            THE COURT:  And in your guys' case, if there's a

10   violation of probation and I decide that you have violated it

11   and terminate and I'm going to sentence you to prison, we go

12   back to the original guidelines calculations in the underlying

13   case.  Okay?

14           DEFENDANT GREGORY JACKSON:  Okay.

15           THE COURT:  Greg, you got that?

16           DEFENDANT GREGORY JACKSON:  Yes.

17           THE COURT:  Jessica?

18           DEFENDANT BROWN:  Yes.

19           THE COURT:  Okay.  You guys are clear on that, the

20   difference?  Okay.

21       So Kelly or Julie, does one of you guys want to summarize

22   any essential terms that if I've misstated, now is the time to

23   correct them, or if I haven't stated them and you think they

24   should be, they should be placed on the record?

25           MS. GARCIA:  Thank you, Your Honor.  You haven't

1    misstated anything.  There are a few additional things we'd

2    like to make sure are clear and read into the record.

3              THE COURT:  Of course.

4              MS. GARCIA:  I'll start with Darias Jackson's Plea

5    Agreement.  I'd like to read the elements of all of those

6    offenses that he's pleading guilty to into the record, please.

7              THE COURT:  Okay.

8              MS. GARCIA:  So paragraph two sets out those

9    elements.  Under this Plea Agreement, as the Court mentioned,

10   Mr. Jackson is pleading guilty to Count One, Possession of

11   Ammunition by a Prohibited Person.  So if this proceeded to

12   trial, the government would have to prove:

13       First, that the defendant has been convicted of a crime

14   punishable by imprisonment for more than one year;

15       Second, that the defendant, following his conviction,

16   knowingly possessed the ammunition specified in the Second

17   Superseding Indictment;

18       Third, that at the time the defendant possessed the

19   ammunition, he knew that he had been convicted of a crime

20   punishable by imprisonment for more than one year;

21       And, fourth, that the specified ammunition crossed a state

22   line prior to the alleged possession.

23       Count Two is Conspiracy to Commit an Offense against the

24   United States.  The elements the government would have to

25   prove at trial are:

First, that two or more persons conspired, or agreed, to commit the crime of Obstruction of Justice or Perjury, that is:  to corruptly influence, obstruct, impede, or endeavor to influence, obstruct or impede the due administration of justice in a proceeding pending before a Court of the United States or a federal grand jury.

To be clear, the government would not need to prove that the defendant knew of the federal status of the obstructed proceeding.

Or another object of the conspiracy could be to knowingly give testimony under oath before a federal grand jury where the testimony was false and where the false testimony was material to the grand jury's investigation.

Then the second element of this conspiracy crime is that the defendant knowingly and voluntarily joined the conspiracy;

Third, that a member of the conspiracy committed an overt act for the purpose of advancing or helping the conspiracy.

Now, Count Six, which Mr. Gregory Jackson is also pleading guilty to -- so this is going to apply to both of them.  The elements there are:

First, that two or more persons conspired, or agreed, to commit the crime of Witness Tampering, that is:  to knowingly intimidate, threaten, or corruptly persuade another person, or attempt to intimidate, threaten or persuade another person with the intent to cause or induce any person to withhold

1    testimony, a record, a document, or other object from an

2    official proceeding;

3         Second, the defendant knowingly and voluntarily joined the

4    conspiracy.

5         The term "official proceeding" in the context of the

6    elements means, among other things, a proceeding before a

7    judge or court of the United States, a United States

8    magistrate judge, a federal grand jury, or a Federal

9    Government agency which is authorized by law.

10        Again, the government need not prove that the defendant

11   knew of the federal status of the obstructed proceeding.

12        While I'm on the elements --

13             THE COURT:  You want to go ahead and do Count Seven?

14             MS. GARCIA:  That's what I was going to say.  Let me

15   go over to Mr. Gregory Jackson's, and I'll do Count Seven.

16        So Count Seven is Witness Tampering.  The elements are:

17        First, that the defendant knowingly intimidated,

18   threatened, or corruptly persuaded another person, or

19   attempted to intimidate, threaten, or corruptly persuade

20   another person with the intent to cause or induce any person

21   to withhold testimony, a record, a document, or other object

22   from an official proceeding.  And, again, those same

23   definitions of "official proceeding" apply.

24        I would like to clarify one thing as to the elements for

25   Miss Brown.

1    THE COURT:  Can you hold on one second, Julie?

2    MS. GARCIA:  Yes.

3    THE COURT:  Okay.

4  So Jay and Darias, are you guys good with that recitation

5 of the elements as contained in the Plea Agreement?

6    MR. CLARK:  Yes, Judge.

7    THE COURT:  Stephanie and Greg, are you okay with

8 that?

9    MS. KESSLER:  Yes.

10    DEFENDANT GREGORY JACKSON:  Yes.

11    THE COURT:  Okay, go ahead.

12    MS. GARCIA:  Thank you, Judge.  I know the Court

13 described the main three elements of the Accessory After the

14 Fact related to Miss Brown.  I just want to specify the

15 elements of the 201(c)(2) object of this Accessory After the

16 Fact violation, with the Court's indulgence.

17  So the first element of this offense under Section 3 are

18 that the defendant knew that someone else had already

19 committed the crime of Illegal Gratuity to a Witness, in

20 violation of 18 United States Code Section 201(c)(2).

21  And in this particular case what the government would have

22 to prove is that someone gave, offered, or promised money to

23 A.W., the victim in this case, and; second, for testimony to

24 be given under oath by him in Case Number 1:12-CR-095-07 in

25 the United States District Court for the Southern District of

1   Ohio, or for being absent from that proceeding so that he

2   could not testify as a witness.

3       The second element is that the defendant, Miss Brown, then

4   helped that person try to avoid being arrested, prosecuted, or

5   punished.

6       Third, that the defendant did so with the intent to help

7   that person avoid being arrested, prosecuted, or punished.

8       So that should cover all of the elements for all three

9   defendants.

10          THE COURT:  Okay.

11       Jay, do you have Darias's Plea Agreement in front of him

12   or does he have it?

13          MR. CLARK:  He has a copy and I have a copy.

14          THE COURT:  So Darias, in reviewing the Plea

15   Agreement, if you would turn to page 6?  Towards the bottom

16   there on the right side, it says that's your signature.  Is

17   that your signature?

18          DEFENDANT DARIAS JACKSON:  Yes.

19          THE COURT:  And did you sign this because this

20   contains the entire understanding you and Jay have negotiated

21   with the United States?

22          DEFENDANT DARIAS JACKSON:  Yes.

23          THE COURT:  Jay, do you agree with that?

24          MR. CLARK:  Yes, sir.

25          THE COURT:  Okay.

1    Now, Darias, other than the recommendation regarding the

2  supervised release violation, did anybody promise you or tell

3  you I'd treat the case a certain way or make any kind of

4  representations to you in order just to get you to enter this

5  plea?

6         DEFENDANT DARIAS JACKSON:  No.

7         THE COURT:  Okay.  And aside from the fact that had

8  you gone to trial and been convicted under the various counts

9  of the Indictment you may be looking at a tougher sentence

10  than what you may be facing, did anybody levy any kind of

11  force or pressure on you such that this is not your own free

12  and voluntary act?

13         DEFENDANT DARIAS JACKSON:  No.

14         THE COURT:  Okay.  And are you okay with the work

15  that Jay has done in this case leading up to today?

16         DEFENDANT DARIAS JACKSON:  Yes.

17         THE COURT:  Okay.

18    Greg, aside from the recommendation in the Plea Agreement

19  as to the disposition of your case, did anybody make you any

20  other promises, assurances, or tell you I would treat the case

21  a certain way?

22         DEFENDANT GREGORY JACKSON:  No.

23         THE COURT:  Okay.  Aside from the fact that had you

24  gone to trial and been convicted and you may have been looking

25  at a different set of sentencing factors than suggested in the

1  Plea Agreement, did anybody put any force, pressure, or

2  coercion on you to enter the plea in this case?

3            DEFENDANT GREGORY JACKSON:  No.

4            THE COURT:  Is it your own free and voluntary act?

5            DEFENDANT GREGORY JACKSON:  Yes.

6            THE COURT:  And are you satisfied with the work

7  Stephanie has done in this case?

8            DEFENDANT GREGORY JACKSON:  Yes, I am.

9            THE COURT:  Okay.

10     So Zenaida, getting to you and Jessica.

11     Jessica, aside from the consideration that's spelled out

12  in your Plea Agreement, did anybody offer you any promises,

13  inducements or tell you I'd treat the case a certain way?

14            DEFENDANT BROWN:  No.

15            THE COURT:  Aside from the fact that this is

16  obviously less severe than the charges in the Indictment, was

17  there any force, pressure, coercion put against you in order

18  to get you to enter this plea?

19            DEFENDANT BROWN:  No.

20            THE COURT:  So is it your own free and voluntary act?

21            DEFENDANT BROWN:  Yes.

22            THE COURT:  And are you satisfied with the work

23  Zenaida has done in the case?

24            DEFENDANT BROWN:  Yes.

25            THE COURT:  Okay.

1          MS. GARCIA:  Your Honor, I apologize for

2   interrupting.  With the Court's indulgence, may I put two more

3   of the paragraphs on the record just to read them?  I want to

4   make sure the defendants are comfortable with them.

5          THE COURT:  Yeah, sure.

6          MS. GARCIA:  Thank you.  So all three Plea Agreements

7   contain the same waiver of appeal, and I'd like to read that

8   verbatim.

9          THE COURT:  Okay.

10          MS. GARCIA:  So it says in paragraph ten, "In

11   exchange for the concessions made by the U.S. Attorney's

12   Office in this Plea Agreement, the defendant waives the right

13   to appeal the conviction and sentence imposed, except if the

14   sentence imposed exceeds the statutory maximum.  Defendant

15   also waived the right to attack his or her conviction or

16   sentence collaterally, such as by way of a motion brought

17   under 28 United States Code Section 2255, or to seek a

18   reduction of sentence under 18 United States Code Section

19   3582(c)(1)(B) or (c)(2).  However, this waiver shall not be

20   construed to bar a claim by the defendant of ineffective

21   assistance of counsel or prosectorial misconduct."

22      The second paragraph I'd like to read is about the Group

23   Plea Agreement just to make sure that all parties are aware of

24   the terms of these Plea Agreements essentially being linked.

25   So that's paragraph 14.  The wording is slightly different in

1  each of these because it refers in each individual Plea

2  Agreement to the other two Plea Agreements, but I'll clarify

3  that as I go through.

4      So in Mr. Darias Jackson's Plea Agreement it says that,

5  "The defendant understands that this Plea Agreement is

6  contingent on the defendant's co-defendants, Gregory Jackson

7  and Jessica Brown, pleading guilty at the same change-of-plea

8  hearing as the defendant under Plea Agreements that (a), as to

9  Gregory Jackson, would require him to plead guilty to all

10  counts in which he is charged in the Second Superseding

11  Indictment, and under which the U.S. Attorney's Office would

12  recommend that he be sentenced to a term of probation; and

13  (b), as to Jessica Brown, would permit her to plead guilty to

14  a Superseding Information charging her with being an Accessory

15  After the Fact to a violation of 18 United States Code Section

16  201(c)(2) and under which the U.S. Attorney's Office would

17  recommend that she be sentenced to a term of probation."

18      I'm going to stop part-way through here just to clarify

19  that in Jessica Brown's and in Greg Jackson's, it clarifies

20  that under this Group Plea Agreement, Mr. Darias Jackson has

21  to plead guilty under a Plea Agreement under which he'd plead

22  guilty to Counts One, Two, and Six of the Second Superseding

23  Indictment.  There is no other condition as to him.

24      "The defendant understands that if the defendant, Gregory

25  Jackson, and Jessica Brown do not each plead guilty at the

1   same hearing pursuant to the Plea Agreements referenced in

2   this paragraph, the U.S. Attorney's Office and the Hamilton

3   County Prosecutor's Office will not be bound by the terms of

4   this Agreement and may institute any charges or sentencing

5   recommendations that would otherwise be prohibited by this

6   Agreement, and the defendant will also be relieved of his

7   obligations under this Agreement."

8       I just wanted to put that on the record to make sure that

9   all three defendants understand the linked nature of these

10  pleas.

11          THE COURT:  Okay.

12      So Darias, I already asked you if you signed off on the

13  Plea Agreement.  Obviously, this language is contained in the

14  Plea Agreement.  Are you still good with that?

15          DEFENDANT DARIAS JACKSON:  Yes.

16          THE COURT:  Greg, I think I did not ask you about the

17  Plea Agreement.  Did I?  No.  It's on page 5 of your

18  Agreement.  The middle of the page towards the right side

19  purports to be your signature.  Is that your signature?

20          DEFENDANT GREGORY JACKSON:  Yes.

21          THE COURT:  And did you sign that because this

22  contains the entire understanding you and Stephanie have

23  negotiated with the United States?

24          DEFENDANT GREGORY JACKSON:  Yes.

25          THE COURT:  Stephanie, are you on board with that?

```
 1            MS. KESSLER:  Yes.

 2            THE COURT:  And Jessica?

 3            DEFENDANT BROWN:  Yes.

 4            THE COURT:  It's on page 5, I think.  Yeah.  Page 5.

 5   You've got better handwriting than these two guys.

 6            DEFENDANT BROWN:  Definitely.

 7            THE COURT:  On page 5, is that your signature?

 8            DEFENDANT BROWN:  Yes.

 9            THE COURT:  Okay.  And did you sign off on this

10   because this contains the entire understanding you and Zenaida

11   have reached with the United States in this case?

12            DEFENDANT BROWN:  Yes.

13            THE COURT:  Are you satisfied with the work that Z

14   has done on your behalf in this case?

15            DEFENDANT BROWN:  Yes.

16            THE COURT:  I think I already asked Greg if he was

17   okay with Stephanie, right?  Yeah.  So we're good on that.

18       All right.  So about 45 minutes ago I said at some point

19   we would get to a Statement of Facts.

20       Darias, attached to your Plea Agreement is a Statement of

21   Facts which begins on page 7 and goes to page 9.  It's

22   Attachment A, which is incorporated in the Plea Agreement.

23       It says, "I have read that Statement of Facts."  That

24   Statement of Facts contains those elements that make up the

25   offenses, those elements that Julie was talking about a little
```

1  bit earlier.  It contains the elements of the offenses to

2  which you are entering pleas to.

3      So my question is -- and if you say you agree with it, it

4  means you're admitting the offenses contained in Counts One,

5  Two, and Six.

6      So Darias, have you had a chance to read the Statement of

7  Facts and gone over it with Jay?

8              DEFENDANT DARIAS JACKSON:  Yes.

9              THE COURT:  Is the Statement of Facts accurate?

10             DEFENDANT DARIAS JACKSON:  Yes.

11             THE COURT:  And on page -- what did I say it was on,

12 page --

13             MR. CLARK:  Page 9.

14             THE COURT:  Page 9.  Again, that's your signature?

15             DEFENDANT DARIAS JACKSON:  Yes.

16             THE COURT:  Okay.  Is it incorrect or inaccurate in

17 any way I should know about at this time?

18             DEFENDANT DARIAS JACKSON:  No.

19             THE COURT:  Can I take it then you are offering to

20 plead guilty to Counts One, Two, and Six of the Second

21 Superseding Indictment because you did, in fact, commit those

22 offenses?

23             DEFENDANT DARIAS JACKSON:  Yes.

24             THE COURT:  Okay.

25     Greg, same type of questions to you.  The Statement of

1  Facts begins on page 6 and runs through page 8. Again, "I

2  have read the Statement of Facts." The Statement of Facts

3  does contain the elements the government would prove in Counts

4  Six and Seven of the Second Superseding Indictment. If you

5  tell me the Statement of Facts is accurate, that means you're

6  willing to admit you committed the crimes set forth in Counts

7  Six and Seven of the Indictment.

8       So have you read the Statement of Facts?

9            DEFENDANT GREGORY JACKSON:  Yes.

10            THE COURT:  Is it accurate?

11            DEFENDANT GREGORY JACKSON:  Yes.

12            THE COURT:  Is it wrong or incorrect in any way I

13  should know about?

14            DEFENDANT GREGORY JACKSON:  No.

15            THE COURT:  Okay.  And is that why you signed off on

16  it on page 8?

17            DEFENDANT GREGORY JACKSON:  Yes.

18            THE COURT:  So can I take it then you're offering to

19  plead guilty because you did, in fact, commit the offenses in

20  Counts Six and Seven of the Second Superseding Indictment?

21            DEFENDANT GREGORY JACKSON:  Yes.

22            THE COURT:  And Jessica, same question to you.  There

23  is a Statement of Facts attached to your Plea Agreement, which

24  begins on page 6 and runs over to page 8.  Again, "I have read

25  that Statement of Facts," and that does contain the elements

1   of the misdemeanor that you are charged with.  If you tell me

2   the Statement of Facts is accurate, that means you're

3   admitting you committed the offense in the misdemeanor

4   Superseding Information.  Okay?

5           DEFENDANT BROWN:  Yes.

6           THE COURT:  Okay.  Have you read the Statement of

7   Facts?

8           DEFENDANT BROWN:  Yes.

9           THE COURT:  Have you gone over it with Zenaida?

10          DEFENDANT BROWN:  Yes, I did.

11          THE COURT:  Is it accurate?

12          DEFENDANT BROWN:  Yes.

13          THE COURT:  Okay.  Is there anything that's wrong or

14   incorrect I should know about before we go any further?

15        DEFENDANT BROWN:  Um, no.

16          THE COURT:  Okay.  So can I take then you're agreeing

17   to plead guilty to the Information because you did, in fact,

18   commit that offense?

19          DEFENDANT BROWN:  Yes.

20          THE COURT:  Greg, I don't think I asked you.  I asked

21   Darias if he went over it with Jay, and I asked Jessica if she

22   went over it with Zenaida.  Did you and Stephanie review the

23   Statement of Facts as well?

24          DEFENDANT GREGORY JACKSON:  Yes, we did.

25          THE COURT:  Okay.

1    And so we've had conversations about what's contained in

2 the Plea Agreement, about what constitutional rights are

3 implicated both under the Indictment and the Information, and

4 we've had discussions about what could possibly happen in this

5 case.

6    For the last time, Darias, the final time, I'm going to

7 ask you:  How do you wish to plead to the charges in Counts

8 One, Two, and Six of the Second Superseding Indictment, guilty

9 or not guilty?

10         DEFENDANT DARIAS JACKSON:  Guilty.

11         THE COURT:  Greg, same conversation.  We've talked

12 about your rights, the rights you're giving up, and what's

13 contained in the Plea Agreement.  So I'm going to ask you:

14 How do you wish to plead to the charges in Counts Six and

15 Seven of the Second Superseding Indictment, guilty or not

16 guilty?

17         DEFENDANT GREGORY JACKSON:  Guilty.

18         THE COURT:  Jessica, we've reviewed with you your

19 constitutional rights, your right to proceed by Information

20 versus Indictment, and the possible penalties of the case.

21 I'm going to ask you for the last time:  How do you wish to

22 plead to the single-count Information, guilty or not guilty?

23         DEFENDANT BROWN:  Guilty.

24         THE COURT:  Okay.  Based upon my observations of all

25 three defendants in court today -- Darias, Greg, and Jessica

1   -- and the history of this case with the representation of

2   counsel and all that's come before it, I'm completely

3   satisfied that all three of them are in full possession of

4   their faculties, none of them is suffering from any apparent

5   physical or mental illness, clearly none of them are under the

6   influence of narcotics, medication, or alcohol, and they all

7   understand the proceedings in which we're all engaged and have

8   been engaged with their counsel to discuss these various

9   aspects for some period of time.

10       Per our discussions, they all understand the nature and

11  the meaning of the charges and the consequences of the various

12  guilty pleas and also the agreements reached with the United

13  States that we have spelled out which all have been obtained

14  by negotiations undertaken upon their individual behalves by

15  their counsel and have resulted in their Plea Agreements.

16       Therefore, I find that Darias is fully competent and

17  capable of entering an informed plea to Counts One, Two, and

18  Six of the Second Superseding Indictment.  The plea of guilty,

19  based upon my conversations, it's knowing, it's voluntary,

20  it's supported by an independent basis in fact and Attachment

21  A to the Plea Agreement, which it is incorporated herein and

22  which contains each of the essential elements of the three

23  offenses charged, as well as the jurisdiction and venue of the

24  Court.

25       So I'm going to accept the plea and make a finding of

1    guilty.

2        As to Greg, the Court finds that Greg is fully competent

3    and capable of entering an informed plea.  The plea of guilty

4    is knowing, it's voluntary, and it's supported by an

5    independent basis in fact which contains each of the essential

6    elements of Counts Six and Seven of the Second Superseding

7    Indictment as spelled out in Attachment A, the Statement of

8    Facts, which is incorporated herein.  So it lists all the

9    essential elements, as well as the jurisdiction and venue of

10   the Court.

11       So I'm going to accept the plea and make a finding of

12   guilty at this time.

13       As so Jessica, I find that Jessica is fully competent and

14   capable of entering an informed plea, which this is.  The plea

15   is supported by the Statement of Facts, which is contained as

16   Attachment A and incorporated herein.  It's a knowing plea,

17   it's a voluntary plea, and it's intelligently made.  I also

18   find that her Waiver of Indictment and agreement to proceed by

19   Information is made knowingly, intentionally, and voluntarily.

20   In any event, the Statement of Facts contains the basis for

21   the offense, all of the elements, as well as the jurisdiction

22   and venue of this Court.

23       So in her case as well, I'm going to accept the plea and

24   make a finding of guilty.

25       Julie and Kelly, before I start discussing presentence

1  investigation, is there anything else we need to cover?

2  MS. GARCIA:  Just two quick things I'd like to put on

3  the record, Your Honor, relating to the Statements of Facts.

4  I'd like to be clear that the Statements of Facts are

5  identical in all three Plea Agreements.  And given that this

6  was a global resolution for all three defendants, the

7  government did provide all three Plea Agreements to all three

8  defendants before they signed so that they could be aware of

9  exactly what the co-defendants were going to be pleading

10  guilty to and the terms of their Plea Agreements.

11  THE COURT:  Okay.

12  I'm assuming that's accurate, right guys?

13  MR. CLARK:  Yes, it is, Judge.

14  THE COURT:  All right.  Presentence investigation.

15  As I said, normally I would not have any idea what's going to

16  happen.  In terms of the back row, I kind of have an idea of

17  what's going to happen.

18  Darias, we'll have to see how things shake out.

19  In any event, all three of you will be subject to a

20  presentence investigation, which means there will be an

21  interview conducted by our Probation Department.  When that

22  happens, either your lawyer or somebody else from their office

23  should be with you when the interview occurs.  The Probation

24  Department is going to talk to some extent about the offense,

25  but also about your personal history, background,

1    characteristics, things like that.  They're also going to be

2    talking to the government and the government agents.

3        At the end of the day, what they do is they compile a

4    presentence investigation which tries to set out those various

5    offense levels we talked about earlier, as well as a

6    calculation of criminal history.  What happens is, they do an

7    initial presentence investigation that I never see.  It goes

8    out to all the lawyers in the room, and they discuss it with

9    you guys, and these guys discuss it with whomever they want

10   to.

11       In any event, sometimes there's things in the presentence

12   investigation that you or the lawyers may not agree with.

13   Oftentimes, the lawyers are able to talk to the probation

14   officer and straighten something out either factually or

15   conditionally as to what happened.  Oftentimes, however,

16   they're not, and those items make their way into the final

17   presentence investigation, which I do see.  But both sides

18   have the ability to file written objections, which I usually

19   deal with at or before the time of sentencing.  Okay?  Anybody

20   have any questions about that?

21           DEFENDANT DARIAS JACKSON:  No.

22           THE COURT:  Greg, you okay?

23           DEFENDANT GREGORY JACKSON:  Yeah, I'm okay with it.

24           THE COURT:  Jessica?

25           DEFENDANT BROWN:  I'm okay.

1        THE COURT:  Anything else this afternoon?

2    Jay, have we covered everything as far as you're

3 concerned?

4        MR. CLARK:  Judge, the only issue, and I don't know

5 how the Court wants to deal with it, is the pending supervised

6 release violation.  I think his conviction is obviously a

7 violation of supervised release.  If you just want to deal

8 with it at sentencing or I don't know how --

9        THE COURT:  I'll just deal with it at sentencing.

10        MR. CLARK:  Okay.  Other than that I don't have --

11 oh, I do have one other thing.

12        THE COURT:  Yeah.

13        MR. CLARK:  Now that all three have entered pleas, up

14 until today there has been a no-contact order, so Darias has

15 not had any contact with Jessica and his kids.  In light of

16 the pleas being entered, I'm going to ask the Court if you

17 would end that, terminate that no-contact order so he could

18 have contact with his kids.

19        MS. GARCIA:  No objection, Your Honor.

20        THE COURT:  Okay.  Fair enough.

21    Stephanie?

22        MS. KESSLER:  Judge, we did have one thing on behalf

23 of Greg.  There was a release status report to the Court

24 submitted wherein Pretrial Services recommended that his

25 location restriction condition be removed to allow him a

1  little bit more mobility to help co-parent his kids and to

2  work with his T-shirt printing business.

3          MS. GARCIA:  We have no objection, Your Honor.

4          THE COURT:  Okay.  Fair enough.

5      Zenaida, do you have anything else before we break for the

6  day?

7          MS. LOCKARD:  No, Your Honor.

8          THE COURT:  What are these things running now, guys,

9  still a couple of months?

10         MS. LOCKARD:  Probably a couple of months.

11         MR. CLARK:  I think --

12         MS. LOCKARD:  Two to three months.

13         MR. CLARK:  Yeah.

14         THE COURT:  So Darias, you're going to have to be

15  remanded during that period of time.

16     You guys are out under whatever conditions Pretrial has

17  you under with, of course, the modification which Stephanie

18  just discussed.  So I'm fine taking off the electronic

19  monitoring.

20     With that, anything else?

21         MS. GARCIA:   No.  Thank you, Your Honor.

22         THE COURT:  Okay.  We'll stand in recess then.

23  Thanks, guys.

24         MR. CLARK:  Thank you, Judge.

25         COURTROOM DEPUTY:  Court is in recess.

1      (The proceedings concluded at 1:00 p.m.)

2

3                    C E R T I F I C A T E

4

5      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

6  THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7

8  /s/Maryann T. Maffia    June 19, 2023

9  Maryann T. Maffia, RDR
   Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25